COMMISSIONERS OF STATE PARK AT MINNEHAHA FALLS *vs.* ISADORE HENRY and others.

March 15, 1888.

**Eminent Domain—Constitution—Land for State Park.**—Laws 1885, *c.* 129, providing for the condemnation of lands for a state park, is constitutional.

**Same—Award—Confirmation—Reappraisal.**—Evidence offered by the appellant on the hearing upon the application to confirm the award of the commissioners, *held* insufficient to authorize an order for a reappraisal by this court, or to warrant a reversal of the order of the district court confirming the award.

Pursuant to Laws 1885, *c.* 129, providing for the selection and appropriation of lands in Hennepin county for a State Park, the commissioners appointed by the governor to make such selection proceeded to do so, the tract selected including the Falls of Minnehaha. On their application the district court for Hennepin county appointed three appraisers of the land selected, who, after qualifying and giving the notice prescribed in the act, met and examined the lands, heard the evidence offered by interested persons, appraised each parcel and tract and ascertained the compensation to be paid for it, and reported their proceedings and appraisement to the court which appointed them. The commissioners thereupon moved for a confirmation of the report. At the hearing of the motion, before *Lochren,* J., Isadore Henry and 25 other land-owners opposed the confirmation of the report, each of them severally objecting to it on the grounds (1) that the act is unconstitutional; (2) that neither the map nor survey of the land proposed to be taken, nor the report of the appraisers, specifies the amount or number of acres to be taken from each one or all the owners; (3) that the appraisers have not awarded just or adequate compensation, and their appraisement is far below the market value of each of the tracts, and is wholly inadequate and unjust. These objections were overruled and the objectors severally excepted. Thereupon each of them moved the court to hear evidence as to the value of each piece of land described in the report, and as to the fairness and adequacy of the awards therein made. This motion was denied, and the objectors severally excepted. One Mealy was then sworn as a witness in their behalf, and each objector offered to prove by him and other witnesses that the fair market value of each tract specified in the appraisers' report is, and was at the date of filing the report, at least double that at which it was appraised. On objection by the commissioners this was excluded, the land-owners excepting. The objectors then severally moved that the court direct a new appraisal, which motion was denied, and an order was made confirming the report.

The objectors severally appealed (1) from the appraisement and report, and (2) from the order of confirmation. The appeals were argued together.

*Smith & Reed, Kitchel, Cohen & Shaw, Atwater & Hill, Hiram C. Truesdale, Cross & Carleton,* and *Scott & Longbrake,* for appellants.

*Daniel Fish,* for respondents.

VANDERBURGH, J.   This is a proceeding by the state to appropriate lands for a public park.   We do not understand that the authority of the state to make such appropriation in the exercise of the power of eminent domain is questioned, or that the plan adopted for ascertaining the compensation to be paid to the land-owners is attacked by the appellants.   Private property is held subject to the control of the sovereign power of the state, exercised through the legislature, for public uses; and the land-owner's rights and interests are subordinate to this authority, and he must necessarily submit to the inconvenience and delays incident to the proper proceedings instituted to ascertain the price to be paid or compensation to be made for the property compulsorily taken from him.   If the purpose be public, the legislature is to judge of the necessity or propriety of appropriating the land, and, in the exercise of the power of eminent domain, simply obliges the owner to sell, "and the public is to be considered as an individual treating with an individual for an exchange." 1 Bl. Comm. 139.   And a reasonable opportunity may be given to abandon the proceedings, or reject the offer, if the price is found to be such as to render it inexpedient to go on with the projected enterprise.   And where the property is taken directly by the state or a municipal corporation, the fact that payment is postponed for a reasonable time to make an assessment and collect a tax to pay the amount ascertained, or to enable the legislature to decide finally, or make an appropriation, does not make the law authorizing condemnation proceedings unconstitutional.   In such cases the bargain is not deemed closed until the final determination to take the property, nor the property actually taken until the compensation be paid or secured by being made a lawful claim upon the public treasury.   *Hammersley* v. *Mayor, etc.,* 56 N. Y. 533; cases cited, 31 Am. Dec. 374; *State* v. *Messenger,* 27 Minn. 119, 123, (6 N. W. Rep. 457.)

And just here comes in the objection of the appellants that under this act the damages are estimated at one period, and the actual

appropriation of the land must necessarily, under its provisions, be at a period considerably later, and may be unreasonably delayed. But, as already suggested, the legislature might reserve the right to abandon before finality, and require a reasonable time to complete the proceedings and provide for payment. These things are necessarily incident to the exercise of the power of eminent domain. But, under the rule adopted in this state, the bargain, when closed, in order to secure just compensation, must ordinarily be held to relate back to the filing of the award fixing the compensation, and interest must be added for the intervening time. The order of the court below, therefore, directing that interest be included in the amount to be allowed each land-owner, was in accordance with the law as construed in this state for adjusting compensation in condemnation proceedings. It is merely determining what amount the state must pay in order to obtain the land, if it decide to take it; the award not yet being a claim against the state. It is not like a case where the award is secured by being made an absolute claim against the state. In some states the retention of the possession by the land-owner is deemed sufficient to satisfy the requirement of the constitution, but the rule is otherwise in this state. *Warren* v. *First Div., etc., R. Co.*, 21 Minn. 424; *City of Minneapolis* v. *Wilkin*, 30 Minn. 140, (14 N. W. Rep. 581.) In some cases, however, the possession would fully compensate the land-owner for the delay in making provision for payment. For the purpose of fixing the compensation, then, the rights of the parties are to be determined as of the date of filing the award, though the title or right of possession does not pass until the compensation is actually paid or legally secured.

By this act—which, in its essential features, is a copy of the New York act for the acquisition of a state park at Niagara Falls, (Laws N. Y. 1883, c. 336)—the lands are not to be taken possession of by the state until the amount awarded is duly appropriated by act of the legislature, and paid or tendered. No unreasonable delay is contemplated in the provisions for the proceedings to be taken under the act for the appraisement of the land and the report thereof to the legislature. The report of the appraisers (section 6) was required to be filed as soon as completed, and could not be delayed more than

six months from their appointment; and the commissioners were to report the proceedings when concluded, together with the awards, to the legislature. And it is further provided that, in case the legislature shall fail to make any appropriation to pay the owners of the land proposed to be taken, at the session next succeeding that to which their report shall be submitted, all the proceedings are to be null and void, and thereupon the parties interested are to be paid their reasonable expenses out of the state treasury. The state thus reserves the right to abandon the proceedings after the final report is made. Under this act there does not appear to be any good reason for undue delay. The officers or the parties interested might be negligent or dilatory, and the proceedings be delayed by litigation, but this is not the fault of the law. It was not to be presumed that the commissioners or appraisers would be unfaithful, negligent, or incompetent. Their duties were public and official, and discharged under the sanction of an oath; and they could be compelled to act, and thus prevent unreasonable delay on their part. We think that a less objectionable procedure might have been framed, but that was for the legislature. And we are unable to see that the act is liable to the criticism that it was calculated, when carried into effect with fidelity and reasonable judgment and discretion, to work injustice, or vexatious delays. See *State* v. *Board of Park Com'rs*, 33 Minn. 524, (24 N. W. Rep. 187.) One of the principal grounds of objection urged is that the matter may go over to the next legislature after the one that receives the report. This, however, does not prevent the legislature from acting at the same session, if the report is seasonably presented, so as to give time and opportunity for such action. And if it was so acted on and disposed of by that legislature, it would be a finality, whether the awards were accepted or the proceedings abandoned. The legislature in passing the act have determined upon the question as to what would be a reasonable time in which to bring the proceedings to a close, and where it assumes to do so, the courts must concede to it a wide discretion. It was said by this court in *State* v. *Messenger*, 27 Minn. 119, 125, (6 N. W. Rep. 457:) "What is a reasonable time is a question generally resting largely in the sound discretion of the legislature in view of all the circumstances." And in

respect to a short limitation: "To justify a court in holding a law void because it contains an unreasonable restriction as to time, * * * the time limited must be so short as to amount to a practical denial of the right itself." The state is presumed to be solvent and honest, and to deal justly and fairly with its citizens. The court has carefully considered the objections raised by the appellants to the validity of this act, and are obliged to conclude that they are such as might be urged against the propriety and expediency of the legislation, rather than its constitutionality.

2. Under section 7, upon the application to confirm the award, the district court "shall hear the matter, and make such order as may be just." It is conceded that the record of the proceedings is regular on its face, and no irregularity on the part of the appraisers is charged. It is only insisted that the valuation placed upon the land is too low. Whether the court might not set aside or refuse to confirm the awards for irregularities or gross unfairness in the appraisal shown by evidence *dehors* the record, we need not determine, as we are of the opinion that no such showing was made, and the proof offered did not go far enough to make a case for such relief. The record shows, and it is not questioned, that all parties had notice and ample opportunity to present their evidence and be heard before the appraisers; that the appraisers carefully examined the various tracts and parcels of land, duly considered the evidence, and made their appraisal accordingly; and the legal presumption is that they discharged their duty. There is nothing to show that all proper evidence offered on both sides was not received and considered, or that the evidence now offered, or similar evidence, was not also offered and heard on the appraisal, or that there may not have been abundant countervailing evidence. And there is no question, perhaps, upon which the opinions of witnesses are more likely to differ than that of value. For the same reasons the application for a reappraisal in this court must fail, and, besides, this court would hardly assume to grant the motion upon an *ex parte* showing merely.

3. We see no objection to the form of the award. Under section 10 the court would have to determine between "diverse and conflicting claimants," and direct to whom the award shall be paid, and that

272 .

the money should be paid into court. In case an appropriation should be made, and in the mean time any changes shall have occurred in the amount due to lien claimants, undoubtedly the district court may upon a further hearing make such further order as to the payment of the amount deposited as may be proper. Affirmed.