KENNETH C. FORTMAN AND ANOTHER v. CITY OF MINNEAPOLIS AND ANOTHER.[1]

May 1, 1942.

No. 33,029.

[1]Reported in 4 N. W. (2d) 349.

*R. S. Wiggin,* City Attorney, and *John F. Bonner* and *Palmer B. Rasmusson,* Assistant City Attorneys, for appellant.

*Maurice S. Bush,* for respondents.

*J. A. A. Burnquist,* Attorney General, *Chester S. Wilson,* Deputy Attorney General, and *George B. Sjoselius,* Assistant Attorney General, *amici curiae,* filed a brief in support of the contention of respondents.

HILTON, JUSTICE.

The substantial question in this proceeding for a declaratory judgment involves the validity of certain ordinances of the city of Minneapolis. Respondents are the owners of a parcel of land the title to which was forfeited to the state for tax delinquency. Respondents acquired their title from an association which in turn took title from the state. Desiring to occupy the premises and to make connection with the city's water main and sewer facilities, respondents made application for a permit. This was denied unless they would make a payment of the difference between what the lot in question had been assessed for those improvements and what the city had received from the proceeds of the tax sale by the state. The assessment for the water main was $74 and $80 for the sewer. Application of the $75 proceeds of the sale to these amounts left unpaid of the original assessment $52.81 on the sewer and $62.80 on the water main. In order to satisfy their water and sewer requirements, respondents paid these amounts under protest. By this proceeding they seek not only a refund, but also an adjudication that the ordinances under which the connecting charges were made are contrary to the laws of this state. Re-

spondents' views prevailed below. From a judgment invalidating the ordinances and ordering the refund, the city has appealed.

Respondents urge that the ordinances are contrary to L. 1935, c. 386, in their attempt to reëncumber property which by the tax process has been purged of its liability for taxes. The city, however, insists that equitably, morally, and legally it is entitled to recover the construction costs for the special improvements in question.

After the property in question was sold to the state, the state became the absolute owner, subject only to a trust in favor of the respective taxing subdivisions interested in the property. See State ex rel. Beeth v. Monick, 201 Minn. 635, 637, 277 N. W. 211. Chapter 386 was passed in order to regulate and provide for disposition of lands held by the state in that capacity. Amended in 1939 by L. 1939, c. 328, its purpose is to have delinquent tax lands classified, appraised, and sold or leased in order to liquidate the tax liability and retransfer the lands to persons from whom tax revenues can be expected. The county board is required to determine the "appraised value" of the delinquent lands, and the county auditor is required to sell them, "but not for a less sum than the appraised value." (§ 1.) The net proceeds from the sale or rental are apportioned by the county auditor, first to the municipal subdivision having unpaid assessments against the land for special improvements; second, to retire bond issues levied against the land; and, lastly, if any still remain, to state and local taxing units in specified percentages. (§ 8.) It was under the priority afforded special assessments by this section that the city received all of the proceeds of the sale by which title was transferred to the association.

Under § 7 of c. 386, the county auditor, "immediately after forfeiture to the state of any parcel of land," "shall cancel all taxes and tax liens appearing upon the records, both delinquent and current, and all special assessments, delinquent or otherwise." Acting thereunder, the county auditor cancelled the lien of the city for the special improvements upon the lot in question. But, in

exchange for the cancellation of its lien, the legislature gave the city prior claim upon the proceeds. Undoubtedly, the contemplation of the legislature in enacting this law was that the municipality was adequately safeguarded by the requirements that the property be sold at its appraised value and that special improvements receive first consideration in the application of the proceeds. However, we are advised that it is not uncommon for a deficit to remain after all proceeds have gone to the city. It was to avoid this out-of-pocket loss that the city enacted the ordinances here involved.

The ordinances attempt to recover the amount not realized out of the proceeds by imposing upon the new owner of the tax-forfeited land the obligation of paying this amount as the condition of using the sewer and water facilities. Enacted in 1939, they refer specifically to c. 386 and to the requirement that the new owner pay as a connection charge that portion of the assessment not recovered from the proceeds. In support of their validity, the city urges that, as proprietor of the water and sewer facilities, it is entitled to be reimbursed for the construction cost regardless of the fact that one remedy is insufficient. It is said that the property was specially benefited by the improvements and should pay its proportionate share of the cost. This right to reimbursement is said to exist independently of the effectiveness of the collection process for the enforcement of the assessment. Support for these contentions is said to be found in the city charter. However, we think that the charter does not at all support these contentions, but rather has specifically indicated the method—the exclusive method—by which assessments for special improvements are to be collected.

The city charter authorizes assessment of abutting premises for their proportionate share of the improvements. Minneapolis City Charter, c. X, § 8. The enhancement in value of those premises provides the justification for the assessment. Assessment alone, however, even with the lien which protects it (Mason St. 1927, § 2192), does not produce tax revenues where the owner of the

property neglects or refuses to pay. Consequently, the charter specifically provided that "such assessment shall be collected and the payment thereof enforced with and in like manner as state, county and other taxes are collected and the payments thereof enforced." (*Id.* § 15.) This mandate from the city fathers fixed the only method by which collection for special improvements might be made. This provision excludes the supposition that alternative remedies were granted. Furthermore, it manifests a willingness to abide the consequences and productivity of that method as clearly as if after the word "manner" the framers had said, "and with like consequences."

We think that in view of this charter provision the arguments of appellant, legal and constitutional, are lacking both in substance and realism. Naturally, the effectiveness of the tax-collecting machinery depends upon the prevailing economic conditions. In recent years the several legislative enactments stand as startling testimonial that too often the tax burden against the land exceeds its value and economic utility, and demonstrate that the state and its taxing subdivisions have had to be satisfied with less than full realization of the amount of tax delinquency. See Mason St. 1940 Supp. §§ 2139, 2139½; State ex rel. Equity Farms, Inc. v. Hubbard, 203 Minn. 111, 280 N. W. 9; State ex rel. Matteson v. Luecke, 194 Minn. 246, 253, 260 N. W. 206, 99 A. L. R. 1053 (dissent of Mr. Justice Julius J. Olson). The manifest legislative policy is to accept a present loss in tax revenues to accomplish future betterment.

By its charter the city has indicated that whatever can be realized from delinquent assessments shall be realized through the prevailing statutory scheme used in the collection of other taxes. To the extent that, notwithstanding the priority given special assessments by c. 386, the city sustains a loss, that loss must be accepted as the condition of effectuating the longer policy of fostering future tax revenues. The concern of the city for its own well-being cannot override the expressed will of the legislature. The attempt by the city artificially to restore the vitality of the assess-

ment lien extinguished in the tax forfeiture process is violative not only of the declared legislative will but also of its own charter.

Judgment affirmed.