STATE, BY J. A. A. BURNQUIST, ATTORNEY GENERAL, v.
GERTRUDE A. FLACH AND OTHERS.
COUNTY OF HENNEPIN, APPELLANT.
MARY L. CARY, RESPONDENT.
HENRY VOEGELI, INTERVENER-APPELLANT.[1]

December 4, 1942.

No. 33,382.

[1]Reported in 6 N. W. (2d) 805.

*Frank J. Williams,* County Attorney, and *Edward J. Shannon,* Special Assistant County Attorney, for appellants.

*Moonan & Moonan,* for respondent Mary L. Cary.

JULIUS J. OLSON, JUSTICE.

Appeal by the state from an order distributing an award in a highway condemnation proceeding.

Mary L. Cary was the record owner in fee of the involved property, subject to taxes levied and assessed for the year 1932 and subsequent years, when the state highway department on September 23, 1940, brought this proceeding to condemn her property for trunk highway purposes. (Hereafter we shall refer to her as the owner.) In the condemnation proceeding she was named the "owner in fee" of the premises, the state being listed as the "holder of tax certificate and personal property judgment lien" thereon. On November 19, 1940, the petition to condemn was granted and commissioners appointed to ascertain and report the damages for properties to be taken. On February 15, 1941, they filed their "partial report" awarding $500 damages to be paid for the taking of this property. In their report they stated:

"In view of the conflicting interests of said owners, we recommend that the said award be deposited in the office of the clerk of District Court * * * to be distributed to the owners as directed" by the court.

On February 26, the owner filed a notice of appeal claiming the award to be inadequate.

By L. 1941, c. 43, approved March 5, 1941, Minn. St. 1941, §§ 282.24 to 282.32 (Mason St. 1941 Supp. §§ 2176-34a to 2176-34j), it is provided:

"Section 1. The owner at the time of forfeiture * * * may repurchase any parcel of land claimed by the state to be forfeited to

the state for taxes, if such repurchase is made prior to November 1, 1941, unless prior to the time repurchase is made such parcel shall have been sold by the state as provided by law."

Section 2 provides that when such property is repurchased "special assessments heretofore cancelled * * * shall be reinstated by the county auditor."

In conformity with and pursuant to that act, the owner on May 5, 1941, tendered to the county auditor the amount required thereby to make effective such repurchase. The offer was refused upon the ground that the state had become the owner under L. 1935, c. 278, relating to forfeiture of land for nonpayment of taxes. On June 9, the state moved for dismissal of the appeal upon that ground. On June 20, the court denied the motion. Then, on December 2, the state and the owner, by their respective attorneys, "settled, compromised and dismissed" the appeal and increased the amount of the award to $750. On the 23d, that amount was deposited with the clerk in conformity with Minn. St. 1941, § 117.10 (Mason St. 1927, § 6546). On July 17, 1942, the order distributing the award was made. On August 15, the court, on motion of the state, amended its prior order by adding the following:

"That on the 21st day of February, 1940, the said * * * Parcel 39, was forfeited to the State of Minnesota under the provisions of Laws of 1935, Chapter 278, for nonpayment of the 1932 real estate taxes; and that on February 15, 1941, the State of Minnesota, by virtue of said forfeiture, was the owner of said lot, in trust for the respective taxing districts interested in said taxes on the date of said forfeiture."

In all other respects the original order remained the same, the court being of opinion that the original owner, having complied with the 1941 act, retained or was restored to all the rights of ownership. That, as we see the situation, is the determinative question for decision here.

■ The statute for repurchase of forfeited lands obviously is remedial in its purpose. This being so, it is our duty to give it

full effect when reasonably possible. 6 Dunnell, Dig. & Supp. § 8950, and cases under note 63. "The cardinal principle of statutory construction is to save and not to destroy." National L. R. Board v. Jones & Laughlin S. Corp. 301 U. S. 1, 30, 57 S. Ct. 615, 621, 81 L. ed. 893, 907, 908, 108 A. L. R. 1352. And in State ex rel. Equity Farms, Inc. v. Hubbard, 203 Minn. 111, 116, 280 N. W. 9, 13, we said:

"It is not the policy of the state, nor should it be, to deprive owners of real estate of their interest therein on account of tax delinquency. If any reasonable means can be devised whereby ownership may be protected against tax forfeitures, without injury to others, clearly it should be the purpose of the state to lend a helping hand."

■ It is the contention of the state that there was here a "sale" under the condemnation proceedings, which took place before the rights of the owner came into play under her repurchase application. To sustain this contention, it relies upon the condition in L. 1941, c. 43, § 1, providing: "unless prior to the time repurchase is made such parcel shall have been sold by the state as provided by law."

We find it difficult to agree with that theory. The language chosen does not convey the idea of a "sale" when, as here, there was a "taking" by the sovereign power for a public use. "Eminent domain is an inherent and essential attribute or prerogative of sovereignty. It is not conferred by the constitution," since "private property is held subject to the control of the sovereign power of the state, exercised through the legislature, for public uses." The right "rests" in "public necessity." 2 Dunnell, Dig. & Supp. § 3013, and cases under notes, among these, and especially pertinent, is Commrs. of State Park v. Henry, 38 Minn. 266, 268, 36 N. W. 874. But the *right* can be and is restricted by our con- stitution, which provides (art. 1, § 13):

"Private property shall not be taken, destroyed or damaged for public use, without just compensation therefor first paid or se- cured."

True, in a legal sense and under certain conditions, condemnation has been treated as a purchase and sale. In support of that theory, counsel for the state cite and heavily rely upon Independent School Dist. v. State, 124 Minn. 271, 277, 144 N. W. 960, and Commrs. of State Park v. Henry, 38 Minn. 266, 36 N. W. 874. The question presented in the school district case was whether a taking by condemnation of school lands violated Minn. Const. art. 8, § 2, which provides "that no portion of said lands shall be sold otherwise than at public sale." The court deemed proceedings in condemnation the equivalent of a public sale, since (124 Minn. 278, 144 N. W. 962):

"Its [the land] value as determined by the condemnation commissioners, or by the court on appeal, must be paid by the school district, and the amount thereof becomes a part of the general school fund, the income from which inures to the benefit of all school districts of the state. The result of which is that no special privilege is acquired or gained by this particular school district over other districts." The constitutional restriction, said the court, "was to prevent private sales, and effectually to preclude secret transactions with speculators. In other words, the intention was to surround the disposal of the lands with publicity, thus avoiding private or secret dealings, which often result disastrously to the best interests of the state."

In Commrs. of State Park v. Henry, 38 Minn. 266, 268, 36 N. W. 874, the court, after stating that—

"Private property is held subject to the control of the sovereign power of the state, exercised through the legislature, for public uses," held that "the land-owner's rights and interests are subordinate to this authority, and he must necessarily submit to the inconvenience and delays incident to the proper proceedings instituted to ascertain the price to be paid or compensation to be made for the property *compulsorily taken* from him. If the purpose be public, the legislature is to judge of the necessity or propriety of appropriating the land, and, in the exercise of the power of emi-

nent domain, simply *obliges the owner to sell,* 'and the public is to be considered as an individual treating with an individual for an exchange.' " (Italics supplied.)

So, in Summers v. Midland Co. 167 Minn. 453, 456, 457, 209 N. W. 323, 324, 46 A. L. R. 816, the court speaks of taking under condemnation as a "forced sale." There the question before the court was whether a vendee in possession under a contract for deed could rescind upon the theory that the vendor, because of condemnation proceedings brought after the contract was made, could not comply with his contract obligations, *i. e.,* convey the land in fee. This court held that "no person is presumed to covenant against the acts of sovereignty," that the vendee took the property "subject to the exercise of the right of eminent domain," and that, as he was the "equitable owner" when the sovereign took the property, therefore the award should go to him, since "in theory at least such *forced sale* provides full compensation" in lieu of his interest in the property so taken.

We also have for our guidance Minn. St. 1941, §§ 282.01 to 282.13 (Mason St. 1940 Supp. §§ 2139-15 to 2139-25 and 2139-27L, 2139-27m), relating to the sale of tax-forfeited lands. A careful reading of these sections leads to the inevitable conclusion that the "sale" concerning which the 1941 law speaks is such a sale as is made between the state and third parties and is clearly distinguishable from the *taking* or *forced sale* under condemnation. In addition, we have the constitutional provision itself, which states that private property shall not be "taken" except for a "public use," and then only if "just compensation therefor" is "first paid or secured."

A sale is defined as the "act of selling; a contract whereby the absolute, or general, ownership of property is transferred from one person to another for a price, or sum of money, or, loosely, for any consideration." Webster's New International Dictionary (2 ed.) 1934. Nor can anyone doubt that the common understanding of the word is that of a contractual relationship between the buyer

and the seller. There must be a meeting of the minds. There must be an offer and an acceptance, expressed or implied. Until an offer is accepted, the negotiations remain open, and there is no obligation upon either party. "There must be a clear accession on both sides to one and the same set of terms." 5 Dunnell, Dig. & Supp. § 8499. For other definitions, see 38 Wd. & Phr. (Perm. ed.) 55, *et seq.*

In view of the beneficent purpose of the repurchase act, no one can doubt that the landowner is the intended beneficiary, who is permitted to redeem from forfeiture within the time and pursuant to the conditions stated in the act. That Mary L. Cary brought herself strictly within its provisions, we think is abundantly shown. True, the title to the property is gone, but in its place is its *value*, the *price* that the state highway department paid for it; *i. e.*, the money stands in the place of the property itself. In the situation before us, the state in its governmental capacity gets a full return for the taxes levied plus the interest provided by the repurchase act; and, since the state highway department has paid the full value of the land into court, the justice of the decision below is so compelling that to an unprejudiced mind no other result could obtain.

Affirmed.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.