### In re Harold R. ADOLPHSEN and Carolyn J. Adolphsen, individually and as officers and shareholders of International Hawaiian Inns, Inc., d/b/a Hopkins House, Debtors.

### Bankruptcy No. 3–83–80.

United States Bankruptcy Court, D. Minnesota.

June 1, 1983.

---

Howard S. Myers, III, Thompson & Klaverkamp, Minneapolis, Minn., for petitioner.

James H. Gilbert and Donald Burke, Meshbesher, Singer & Spence, Ltd., Minneapolis, Minn. for Harold and Carolyn Adolphsen.

John Troyer, Briggs & Morgan, St. Paul, Minn., for F & M.

Hart Kuller, Winthrop, Weinstine & Sexton, St. Paul, Minn., for Unsecured creditors committee—indv. case.

Edward W. Bergquist, Minneapolis, Minn., for International Hawaiian Inns, Inc.

Barbara G. Stuart, Moss & Barnett, Minneapolis, Minn., for Unsecured creditors committee—corp. case.

## MEMORANDUM ORDER

ROBERT J. KRESSEL, Bankruptcy Judge.

All-American Life and Casualty Company and Great National Life Company (hereinafter referred to collectively as "All-American") made a motion for an order setting a time on or before which the debtors would be required to assume or reject a contract for deed in which the debtors are vendees. All-American's motion is based on the belief that the contract for deed constitutes an executory contract subject to the provisions of 11 U.S.C. § 365.

The debtors as well as the unsecured creditors' committees (in the individual case and the related corporate case) oppose All-American's motion. They contend that when the debtor is the vendee, a contract for deed is not an executory contract and, therefore, not subject to the provisions of section 365.

All-American contends that the contract for deed is an executory contract. All parties submitted memoranda on the issue.

Now upon all of the files, records and memoranda of counsel, the following Memorandum Order is made and entered pursuant to Bankruptcy Rule 752.

### I

On December 30, 1977, All-American and Harold R. Adolphsen and Carolyn J. Adolphsen entered into a contract for deed for property constituting the Hopkins House Motel and restaurants located at 1501 Highway 7, Hopkins, Minnesota. All-American sold the property to the debtors and agreed to convey legal title when the purchase price of 4.8 million dollars was paid in accordance with a specified schedule set forth in the contract for deed.

The debtors in turn leased the property to International Hawaiian Inns, Inc., also a debtor currently undergoing a Chapter 11 reorganization. Harold R. Adolphsen owns all of the outstanding stock of International Hawaiian Inns.

Since March 1, 1978 the Adolphsens have made payments under the contract of approximately $40,000.00 per month. In December of 1982, the Adolphsens first defaulted. On January 7, 1983, International Hawaiian Inns, Inc. filed a petition for relief under Chapter 11 of the Bankruptcy Code. On January 17, 1983 the Adolphsens did the same. The debtors currently are in possession of the property and continue to operate the motel and restaurant business-

es. The current amount of the default is approximately $350,000.00.

## II

■ A debtor in possession has all the rights and powers of a trustee (with a few limited exceptions not pertinent here) pursuant to 11 U.S.C. 1107. Therefore, under 11 U.S.C. 365(a), the Adolphsens are vested with the power to assume or reject any executory contract. However, § 365 is barren of any definition of the term "executory contract". The legislative history of § 365 indicates that the term refers to a contract on which performance remains due to some extent on both sides. An example given of a non-executory contract was that of a promissory note. H.Rep. No. 95–595, 95th Cong., 1st Sess. 374 (1977) and S.Rep. No. 95–989, 95th Cong., 2d Sess. 58 (1978), U.S.Code Cong. & Admin.News 1978, p. 5187.

■ In my opinion a contract for deed is not an executory contract for the same reasons a promissory note is not executory. In the case of a note, the lender is only awaiting repayment. Likewise in the contract for deed situation the vendor also awaits payment. All-American has performed its part of the bargain and thus the contract is no longer executory. The fact that All-American holds legal title and must at some point convey it to the debtors does not render the contract executory any more than the duty of the holder of promissory note to return the note when the debt is satisfied makes it executory. Clearly it does not. All-American merely holds title as security for payment just as a lender holds a note.[1]

All-American argues that the existence of § 365(i) proves that a contract for deed is executory. Section 365(i) provides non-debtor vendees protectional options from which to choose when dealing with a vendor debtor who rejects an executory contract for the sale of real property.

■ I think this argument overlooks the fact that a contract for deed is not a contract for the sale of real property. It is merely a financing arrangement for a sale which has already occurred.[2] The vendee has all the incidences of ownership except legal title. The vendee is an equitable owner[3], is in possession, must pay real estate taxes and other property assessments, and must maintain the property. The fact that the vendor retains legal title does not in and of itself, render the contract one for the sale of real property.[4]

## III

My decision that a debtor-vendee's interest in a contract for deed is not executory is supported by *In re Booth*, 19 B.R. 53 (Utah 1982). In that case, Judge Ralph Mabey held that where a debtor is a vendee of a contract for deed, the contract is not executory. There were several reasons for this decision. First, treating the contract like a lien held by a secured party enabled the debtor to accede to any equity which had been built up in the property. Second, it furthered the rehabilitation of the debtor by enabling him to sell it free and clear of

1. For cases supporting the former proposition see *Summers v. Midland Co.*, 167 Minn. 453, 209 N.W. 323 (1926); *In re Petition of S.R.A., Inc.*, 213 Minn. 487, 7 N.W.2d 484 (1942); *First & American National Bank of Duluth v. Whiteside*, 207 Minn. 537, 292 N.W. 770 (1940); *State v. City of Rochester*, 260 Minn. 151, 109 N.W.2d 44 (1961); *Nichols v. L & O, Inc.*, 293 Minn. 17, 196 N.W.2d 465 (1972).

2. *See*, e.g., *Burnquist v. Flach*, 213 Minn. 353, 6 N.W.2d 805 (1942) *Craigmile v. Sorenson*, 239 Minn. 383, 58 N.W.2d 865 (1953) and *Tysk v. Griggs*, 253 Minn. 86, 91 N.W.2d 127 (1958).

3. Id. note 1, supra.

4. An example, in my opinion, of an executory contract for the sale of real property would be where the parties have entered into a purchase agreement. In that case, the vendor has only promised to sell and the vendee has promised to buy. Both obligations at that point remain substantially unperformed and therefore are executory.

the lien or to structure it into a plan. Third, treating a vendee-debtor's contract for deed as a lien avoided unfairly encumbering the debtor with the costs of assuming an executory contract.[5] I am persuaded by Judge Mabey's reasoning which is lengthy, detailed and persuasive.

All-American argues that the decision in *Booth* is defective and contrary to the weight of authority. The thrust of their argument is that Judge Mabey rejected the Countryman definition[6] of "executory contract" and that since the Eighth Circuit has adopted the Countryman definition[7], this court cannot then follow Judge Mabey's decision.

I find All-American's argument unpersuasive. What they seem to suggest is that I should lose sight of the forest because of the trees. It would be wrong to apply a definition or rule not provided in the Bankruptcy Code without giving consideration to the theoretical underpinnings of the Code. The *Booth* decision recognizes the limits of such a generalized rule as the Countryman definition and thereby tempers it in the situation of a debtor-vendee of a contract for deed to a form consistent with the underlying policies of "benefit to the estate" and "rehabilitation". I, too, recognize the limits of the Countryman definition and feel compelled to follow Judge Mabey's reasoning to reach the same result. As the court in *In re Gladding Corp.*, 22 B.R. 632, 635 (Mass.1982) so aptly stated:

> It seems clear, at least to this court, that bankruptcy courts should not be bound by static definitions of what is an executory contract, but should strive to satisfy

the purposes of the Act in conjunction with the goals of the debtor (or trustee), in order that equity may be served. Therefore, I would adopt the approach of Booth as the wiser course, although I have no doubt that, as Judge Mabey explained, the courts have been informally doing so all along. In so choosing, I do not think there is effected any repudiation of the Countryman rule, but merely a recognition of its function and its limitations. I am fairly certain that no contract which could not pass Countryman muster could ever be called "executory", within the meaning of the Act. On the other hand, Countryman sets out only the threshold inquiry, and leaves for the courts further considerations to determine whether a contract is "truly executory". On that basis, Countryman serves more as an "exclusionary" rule rather than as the ultimate test of an executory contract.

THEREFORE, IT IS ORDERED:

All-American Life and Casualty Company and Great National Life Company's motion for an Order setting a time for assumption or rejection is hereby denied.

---

5. Under 11 U.S.C. § 365(b)(1) a debtor who is in default must cure all the defaults or provide adequate assurances prior to assuming the contract. Such costs are also considered a cost of administration and must be paid prior to confirmation.

6. Prof. Countryman defines an executory contract as:

> [A] contract under which the obligation of both the bankrupt and the other party to the

contract are so unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.

Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973).

7. *See*, e.g., *In re Knutson*, 563 F.2d 916 (8th Cir.1977) and *Jenson v. Continental Financial Corp.*, 591 F.2d 477 (8th Cir.1979).