Michael RADKE, Relator,

v.

## ST. LOUIS COUNTY BOARD, Respondent.

No. C4–96–1392.

Court of Appeals of Minnesota.

Jan. 28, 1997.

Robert C. Maki, Bridget A. Brine, Maki & Overom, Chartered, Duluth, for Relator.

Alan L. Mitchell, St. Louis County Attorney, Barbara A. Russ, Assistant County Attorney, Duluth, for Respondent.

Considered and decided by HUSPENI, P.J., NORTON, J., and FORSBERG, J.[*]

## OPINION

NORTON, Judge.

Relator contends the county board's decision denying his request to repurchase tax-forfeited land was arbitrary, capricious, and improper. We reverse.

## FACTS

In 1976, relator Michael Radke and his mother, as joint tenants, purchased 80 acres of unimproved timber land in St. Louis County. Relator suffers from a bipolar disorder, which, after his mother died, worsened to the point that he was unable to manage his finances. As a result, property taxes went unpaid from 1989 to 1996.

In 1995, relator achieved a level of mental and emotional stability and asked a friend to inquire into the status of the property taxes. When the friend learned that the property had been forfeited to the county on December 4, 1995, due to delinquent taxes, she asked for an application to repurchase the land. The county land department delayed for several weeks in sending out the application. In the meantime, the county land department sent relator a letter on March 4, 1996, denying his request to repurchase; the county sent this letter before it had received relator's application. The letter explained:

> Both parcels have good potential for forest management. These parcels if retained would also have the possibility for future exchange with the U.S. Forest Service.

On March 26, relator submitted his application to repurchase the tax-forfeited land and included a cashier's check for $1,922.67, which covered the delinquent taxes, interest, and penalties. He also included a letter explaining his circumstances and his desire to repurchase this property that his mother had left him in her will. Relator explained:

> The property in question is the only legacy I have from my mother, after years of mental illness, it is my only significant asset in the world. I will find a refusal to allow repurchase an unendurable hardship. I had sincerely believed the taxes had been paid through 1994. I am presently exploring a financial conservancy with my attorney; to prevent such problems in the future, should I again be incapacitated. Please consider my request to repurchase the properties in question, in light of my circumstances.

Relator had also secured counsel who appeared at an April 16 meeting where the land department discussed relator's application.

The discussion on the record reflects that several of the commissioners surmised from relator's letter and application that he intended to repurchase the land only because of its timber value. The commissioners considered the land to be valued at a minimum of $32,000: $24,000 for the timber and $8,000 for the land. Despite the fact that relator made no reference whatever to the value of the property as mature timberland, the commissioners commented: "[W]hat this boils down to me is if this person is looking at the

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.

significant asset with the idea that it has $23,000 worth of timber on it that he can get for a couple of thousand bucks"; "I guess the way I look at this, if we are to proceed and allow this individual to repurchase, what St. Louis County is doing is basically giving a gift of $30,000 and we are starting a precedent and where is it going to stop."; and "I don't think I buy the legacy argument, it's a piece of land that they haven't touched for 20 years." Two commissioners supported relator's application to repurchase, based on the hardship to relator and the protection of his property rights. Counsel informed the commissioners that relator intended to build his retirement residence on the property and had no intention of capitalizing on the timber value either to reward himself or to pay his legal fees.

At a second meeting, the county's land commissioner said,

[T]he question in front of you is whether or not it's appropriate to allow $23,000, this timber belongs to the tax payers of St. Louis County not Mr. Radke, if you if the Board wishes to make that available for a substantial profit for Mr. Radke either standing or harvested, that's the prerogative of the Board.

Another commissioner evaluated the best interests of the county:

[T]he charge of the St. Louis County Land Department is that we manage those State lands that are held in trust by the County for the best management purposes of the people of St. Louis County. * * * [W]hat is the best use of management for the taxpayers of St. Louis County, is it to deny or not to deny[?]

When the issue went to the floor for a vote, the board voted 5–2 to deny relator's application to repurchase. Relator obtained a writ of certiorari to appeal the decision.

## ISSUE

Is the county board's decision to deny relator's request to repurchase tax-forfeited land arbitrary, capricious, and improper?

## ANALYSIS

On certiorari review of a board decision, the court's inquiry is limited to questioning whether the board had jurisdiction, whether the proceedings were fair and regular, and whether the board's decision was unreasonable, oppressive, arbitrary, fraudulent, without evidentiary support, or based on an incorrect theory of law. *Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn.1992).

Relator contends the county board's decision is the product of a misapplication of the law and is unsupported by the evidence. Minn.Stat. § 282.241 (1996) governs the repurchase of land after tax forfeiture. The statute provides in part:

The *owner at the time of forfeiture*, or the owner's heirs, devisees, or representatives, * * * *may repurchase any parcel of land claimed by the state to be forfeited to the state for taxes* unless before the time repurchase is made the parcel is sold under installment payments, or otherwise, by the state as provided by law, or is under mineral prospecting permit or lease, or proceedings have been commenced by the state or any of its political subdivisions or by the United States to condemn such parcel of land. The *parcel of land may be repurchased for the sum of all delinquent taxes and assessments computed under section 282.251, together with penalties, interest, and costs, that accrued or would have accrued if the parcel of land had not forfeited to the state.* Except for property which was homesteaded on the date of forfeiture, *such repurchase shall be permitted during one year only from the date of forfeiture, and in any case only after the adoption of a resolution by the board of county commissioners determining that thereby undue hardship or injustice resulting from the forfeiture will be corrected, or that permitting such repurchase will promote the use of such lands that will best serve the public interest.*

*Id.* (emphasis added). The court has the duty to give this statute full effect whenever reasonably possible because the statute is remedial in purpose. *State, by Burnquist v. Flach*, 213 Minn. 353, 355–56, 6 N.W.2d 805, 807 (1942). When enforcing this statute, the

Minnesota Supreme Court has strenuously defended this purpose and the philosophy behind it.

> [I]t is not the policy of the state, nor should it be, to deprive owners of real estate of their interest therein on account of tax delinquency. If any reasonable means can be devised whereby ownership may be protected against tax forfeitures, without injury to others, clearly it should be the purpose of the state to lend a helping hand.

*State ex rel. Equity Farms, Inc. v. Hubbard*, 203 Minn. 111, 116, 280 N.W. 9, 13 (1938) (holding constitutional the statute regarding repurchase of tax-forfeited land that preceded the current statute), *quoted in Flach*, 213 Minn. at 356, 6 N.W.2d at 807.

The transcripts here, however, reveal that the commissioners misconstrued the statutory language to allow the board to deny a property owner the opportunity to repurchase in order to prevent hardship to the *county*. Rather than focusing on correcting the hardship to relator that had arisen from the forfeiture, the county board focused on the prospective financial hardship or injustice that might befall the county if it no longer owned the property. Repeatedly, commissioners referred to the loss the county would suffer by giving up this land and the "precedent" they would set by bestowing a $30,000 "gift" on relator. But the statutory language focuses on the repurchase as a *remedy* to hardship that arose from the forfeiture. The statute allows repurchasing if "*undue hardship or injustice resulting from the forfeiture will be corrected.*" Minn.Stat. § 282.241 (emphasis added).

Relator claims that "hardship" and "injustice" arise here because he has forfeited his property as a result of his mental illness, which had rendered him incapable of managing his finances. We agree. The supreme court has explained:

> [I]t is for the welfare of every community that the law should favor the citizen in all reasonable measures for the preservation of his estate against losses which might result from his misfortunes or his faults, extending to him all the liberality that is consistent with justice to others and to a proper regard for the interest of the public.

*Hubbard*, 203 Minn. at 116–17, 280 N.W. at 13 (quoting 4 Thomas M. Cooley, *The Law of Taxation* § 1558 at 3064–65 (4th ed.1924)). The record shows that relator's mental illness led to his financial difficulties and the forfeiture. He lost the property through no willful act of his own. Indeed, he exhibited responsibility once he achieved mental stability in 1995. He initiated contact with St. Louis County, inquired about his 1995 property tax statement, and requested an application to repurchase within weeks of the forfeiture. In addition, relator hired an attorney to create a conservatorship that will manage his finances.

The majority of commissioners disregarded this evidence and focused instead on the alleged windfall they believed relator would harvest from the property. These allegations about relator's motivation and intent are all conjecture, however; the record does not contain one scintilla of evidence to support this theory. Until December 4, 1995, relator was still the legal owner of this property. The county had only gained the property by forfeiture a few weeks before relator requested to repurchase, whereas relator had paid for it and owned it for 19 years. These facts suggest that the *county* would be the party to reap the windfall if it kept the property. Instead of recouping $1,992.67 in back taxes, the county would receive a $32,000 piece of land that it could conserve, sell, develop, harvest for timber, or exchange with the U.S. Forest Service, as the county land department noted.

The county board's line of reasoning and misapplication of the law disregards relator's property interest and contradicts the purpose of the repurchasing statute, which seeks not to deprive property owners of their rights to their land, but to help create reasonable ways to protect their property interests from tax forfeiture. *Hubbard*, 203 Minn. at 116, 280 N.W. at 13. The county board's error of law warrants reversal. *See Dietz*, 487 N.W.2d at 239 (court may reverse on basis of legal error).

## DECISION

The county board erred when it considered the facts here in light of its own financial interests rather than allowing relator to repurchase his property and correct an injustice. Relator's case falls squarely under the provisions of the remedial repurchasing statute.

**Reversed.**