EDWIN C. WHITNEY *vs.* WILLIAM W. HUNTINGTON.

February 2, 1886.

**Removal of Timber from Land after Execution Sale—Action by Purchaser.**—Where trees standing upon land at the time of the sale thereof upon execution are cut and removed from the same before the expiration of the period of redemption, the purchaser at the execution sale, after his title becomes absolute by the expiration of the period of redemption without redemption, may maintain an action for the conversion of the logs into which such trees have been cut, against a person in possession of such logs who refuses to deliver them to him on proper demand.

Plaintiff brought this action in the district court for Hennepin county, to recover for the alleged conversion of certain logs. The substance of the complaint is stated in the opinion. The answer denied that defendant bought the logs in question from Griffin, alleged

that he bought them from one Beard, and denied, upon information and belief, the material allegations of the complaint.

Upon defendant's motion, the court, *Koon,* J., presiding, ordered judgment upon the pleadings in favor of defendant. The plaintiff appeals from the judgment.

*Babcock & Davis* and *Atwater & Hill,* for appellant.

*Shaw & Cray,* for respondent.

The question presented is whether logs or timber taken from land sold on execution, before the time for redemption has expired, by or by leave of the owner, (the judgment debtor,) and sold to a third person, are the property of the purchaser at the execution sale, so as to enable him to maintain an action of replevin or conversion for them.

The plaintiff's cause of action must stand upon his title to the logs. In order to recover he must show title and ownership. He must rely on the strength of his own title, without regard to the weakness of that of his adversary. Cooley on Torts, 442; *Davidson* v. *Waldron,* 31 Ill. 120.

Conceding that the rights of judgment creditors and those of mortgagees are analogous,—which, however, we do not admit, *Banning* v. *Edes,* 6 Minn. 270, (402,)—this court has held repeatedly that until the time for redemption has expired the title is in the mortgagor and not in the mortgagee. As a consequence, when these logs were cut and sold to the defendant, the plaintiff had no title. *Adams* v. *Corriston,* 7 Minn. 365, (456;) *Berthold* v. *Holman,* 12 Minn. 221, (335;) *Berthold* v. *Fox,* 13 Minn. 462, (501;) *Parke* v. *Hush,* 29 Minn. 434; *Daniels* v. *Smith,* 4 Minn. 117, (172;) *Donnelly* v. *Simonton,* 7 Minn. 110, (167;) *Horton* v. *Maffitt,* 14 Minn. 216, (289;) *Loy* v. *Home Ins. Co.,* 24 Minn. 315. The title to the land and timber, at the time the latter was cut and became personal property, being in the judgment debtor, with a lien thereon in favor of the judgment creditor, if the latter had any remedy, it was an equitable action to restrain waste; but it by no means follows that an action for conversion will lie, to maintain which plaintiff must show that he was owner of the timber at the time of the severance.

BERRY, J. The lands from which the timber involved in this action was taken were subject to the lien of a judgment which had been

assigned to plaintiff, and upon which they were, on April 23, 1883, sold to him on execution, a certificate of sale being duly executed and recorded. At the time of the sale they were unoccupied, and valuable only or principally for the pine timber standing upon them. After the execution sale, and during the winter of 1883–84, one Griffin, with knowledge of the sale and of plaintiff's rights thereunder, entered upon the lands, and cut and removed therefrom the greater part of the pine timber, to the amount of nearly 3,000,000 feet. Thereafter, and sometime in the summer of 1884, defendant purchased the logs into which the timber had been cut, having at the time of purchase knowledge of plaintiff's rights as aforesaid. On or about February 9, 1885, all of the logs being then in defendant's possession, plaintiff demanded the same of him, but he refused to deliver them up, and converted them to his own use. In this action judgment is prayed for their value, ($19,783,) and interest.

Gen. St. 1878, c. 66, § 277, provides that a "judgment, from the time of docketing the same, becomes a lien on all the real property of the debtor in the county, owned by him at the time of the docketing of the judgment, or afterwards acquired." Sections 321 and 322 of the same chapter provide that, upon an execution sale of real property, the officer shall give the purchaser a certificate containing "a description of the real property sold;" and that, "upon the expiration of the time for redemption," the "certificate * * * shall operate as a conveyance to the purchaser * * * of all the right, title, and interest of the person whose property is sold, in and to the same at the date of the lien upon which the same is sold, without any other conveyance whatever."

A purchaser of real property at execution sale makes the bid upon which the property is struck off to him for such interest as the judgment debtor had therein at the date of the docketing of the judgment, or as he has subsequently acquired; and he must, at least, be taken to make it with reference to the state and condition of the property as it is when struck off to him. He must, at least, be taken to make his bid upon the basis and contract, or *quasi* contract, that if, at the expiry of the period of redemption, it remain unredeemed, he shall have it as it was at the time when it was struck off to him; or, in

other words, that he shall have what he bought and paid for. If there are buildings upon and parcel of the property at the time of the sale, his bid includes them as well as and as a part of the *soil;* and the case of standing timber must be the same. If then, at the expiration of the period of redemption, the purchaser's title to lands bought at execution sale having become absolute, he finds that trees which were a part of the lands when he purchased, and for which he has paid, have been removed from the premises, so that the whole thing which he bought and paid for, and to which he is by law entitled, is no longer there, what is his remedy? The record of his certificate of sale is notice to all the world that he possesses an absolute and vested right to have the land (the fee being in the judgment debtor at the time of docketing the judgment, as in this instance) at the expiration of the redemption period *as it was* when struck off to him, if not redeemed; consequently, whoever removes standing trees, which are parcel of the land, from the land, or becomes possessed of them, or of logs into which they have been cut without losing their identity, must be taken to have so done with notice of, and therefore subject to, his (the purchaser's) right; that is to say, to his right to the land, and all that was part of it at the time of the execution sale; and hence the person removing or coming into possession of the trees or logs must be taken to do so subject to the risk of this fixed legal consequence of non-redemption, viz., that the land, and all that was part of it at the time of the execution sale, will become the absolute property of the purchaser thereat. His right to have the property, and all of it, as he bought it, is simply his right to his own, and prior and paramount to that of any other person to sell or acquire any part of it,—a right qualified only to the extent indicated by Gen. St. 1878, *c.* 66, § 328, in defining what is not waste. If we are right, it must follow that where standing trees are removed from land between the time of an execution sale thereof and the expiration of the period of redemption, the property in them, and the logs into which they may have been cut, is, after the expiration of the period of redemption without redemption, in the purchaser at execution sale, and he may therefore maintain an action for their conversion, such as is the action at bar. See *Stout* v. *Keyes,* 2 Doug. (Mich.) 184.

This conclusion is not only in entire harmony with Gen. St. 1878, c. 66, § 328, but in our opinion it is inferentially supported by it. That section enacts that "until the expiration of the time allowed for redemption, the court may restrain the commission of waste on the property by order granted with or without notice, on application of the purchaser or judgment creditor; but it is not waste for the person in the possession of the property at the time of the sale, or entitled to possession afterwards, during the period allowed for redemption, to continue to use it in the same manner in which it was previously used, or to use it in the ordinary course of husbandry, or to make the necessary repairs of buildings thereon, or to use wood or timber on the property therefor, or for the repairs of fences, or for fuel in his family, while he occupies the property."

Waste is defined to be any unlawful act or omission of duty on the part of the tenant which results in permanent injury to the inheritance. Title, "Waste," Whart. Law Dict.; Abb. Law Dict.; Bouv. Law Dict. The statute cited expressly recognizes waste, and, presumably, in this its usual signification, as something which may take place as between the purchaser at an execution sale and other parties, (in possession,) even during the time of redemption, before the purchaser's title has become absolute, and affords him a remedy to restrain its commission. If it is waste at that time, it is certainly waste when the purchaser's title becomes absolute, (see *Jones* v. *Costigan,* 12 Wis. 677;) and whatever difficulties there may be in the way of affording the purchaser, *before* his title becomes absolute, any other than the statutory remedy where the waste is committed before the redemption right expires, there can be none in the way of affording him, *after* his title becomes absolute, all the remedies for such waste which are afforded in other more or less analogous cases. *Sands* v. *Pfeiffer,* 10 Cal. 259. As, for instance, in the case of a reversioner in fee, who, for timber unlawfully cut from his premises, may maintain any of the personal actions of trover, replevin, or—what might be technically objectionable in a case like this at bar—trespass *de bonis;* (Tiedeman on Real Prop. § 82;) or in the case of a land-grant railway company, which, having *earned,* though not having received any formal transfer of, title to lands, may,

after receiving such transfer, maintain trover for logs cut intermediate the earning and the transfer, (*Johnson* v. *Ballou,* 28 Mich. 380;) or as in the case of a mortgagee, who may, after his title becomes absolute, maintain replevin for fixtures severed from the land by the mortgagor after the foreclosure sale, but before the mortgagee's title under such "sale" has become absolute, the mortgagor being meanwhile entitled to possession, (*Sands* v. *Pfeiffer,* 10 Cal. 259;) or as in the case of a landlord, who may maintain trover for fixtures unlawfully severed from demised premises by his tenant, (*Farrant* v. *Thompson,* 5 Barn. & Ald. 826;) or as in the case of a lessor, who, for waste committed by his lessee in cutting trees, might, at common law, maintain an action of waste, or case in the nature thereof, or trover, or even trespass, (*Schermerhorn* v. *Buell,* 4 Denio, 422, per Bronson, C. J.; see, also, Tyler, Fixt. 742–745;) or as in case of a vendee in possession, under a contract of purchase, committing waste by cutting timber, when the vendor may maintain trover for the same when cut, against any one in possession, though a *bona fide* purchaser, so called. *Mooers* v. *Wait,* 3 Wend. 104. See, also, *Morgan* v. *Varick,* 8 Wend. 587; *Hutchins* v. *King,* 1 Wall. 53; *Page* v. *Rogers,* 31 Cal. 293; *Waterman* v. *Matteson,* 4 R. I. 539; *Laflin* v. *Griffiths,* 35 Barb. 58; *Hamlin* v. *Parsons,* 12 Minn. 59, (108;) *Jones* v. *Costigan,* 12 Wis. 677; *Stout* v. *Keyes, supra.*

The statutes and authorities which we have thus cited relate more particularly to *waste;* that is to say, to the unlawful act or omission of a tenant (*i. e.,* holder) of the land upon which the waste is committed. In the case before us it does not appear whether the alleged cutting and removal of timber was done or authorized by any person entitled to be called a *tenant* of the land, or whether it was done by a mere trespasser, and not a tenant either in possession or entitled to possession. But we can conceive of no reason why what we have said and cited as to the rights and remedies of the purchaser at execution sale is not equally, if not *a fortiori,* applicable to the case of a mere trespasser as to one occupying the position of a tenant. Upon the reasons above adduced, and upon the authorities cited, we are of opinion that, upon the facts before stated in this case, the plaintiff is entitled to maintain this action for conversion. The pre-

ventive remedy afforded by the statute before cited is certainly not exclusive. *Sands* v. *Pfeiffer, supra; Jones* v. *Costigan, supra.*

We have not referred to the doctrine of *relation,* although we are by no means certain that it might not be applied to this case with the same result to which we have already arrived as to the plaintiff's right of action. See *Stout* v. *Keyes, supra; Morgan* v. *Varick, supra; Johnson* v. *Ballou, supra.*

We have not found it necessary to designate the right of a purchaser of real property at execution sale, before he has acquired an absolute title by the expiration of the redemption, by any particular name. It has no common-law name, for it was unknown to the common law, and the statute has given it none. In *Lichfield* v. *Ready,* 20 Law J. Exch. (N. S.) 51, it was said by Baron Parke that a "mortgagor is not, in all respects, a mere bailiff; he is much like a bailiff; he is not a mere tenant at will. In fact, he can be described merely by saying he is a mortgagor." And see, also, *Johnson* v. *Ballou,* 28 Mich. 380. Following this authoritative example, we may content ourselves with designating the right spoken of as that of a purchaser of real property at execution sale, before the expiration of the period of redemption. It has, however, been called "a species of conditional equitable estate," (*Page* v. *Rogers,* 31 Cal. 293;) but we are unable to see how this designation, if it may be called such, possesses any descriptive value, or aids in arriving at a conception of the thing itself, or of its nature or attributes.

Judgment reversed, and case remanded for trial.