## HOYT NICHOLS AND OTHERS v. L & O, INC., AND ANOTHER.

196 N. W. 2d 465.

March 24, 1972—No. 42878.

*William E. Crowder,* for appellants.

*Speeter, Johnson, Hautman & Olson* and *Joseph W. Hautman,* for respondents.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Hachey, JJ.

ROGOSHESKE, JUSTICE.

Plaintiffs appeal from a district court determination that, as mechanics lien judgment creditors who purchased defendant's vendor's interest in a contract for deed at a foreclosure sale,

plaintiffs were not entitled to contract for deed payments made on behalf of the vendees' interest during the year of redemption by the vendees' mortgagee, who had purchased the vendees' interest at a mortgage-foreclosure sale. We affirm.

As we have with great difficulty discerned from a wholly inadequate record, defendant L & O, Inc., owned a platted lot of land in Dakota County, Minnesota, which it sold under contract for deed to Ronald Lynne and his wife, Beverly.[1] Thereafter, the Lynnes gave a mortgage to Miles Homes, Inc., securing a note for funds to erect a residence on the lot. The amount of the note secured by that mortgage appears to have been $10,177.96. L & O, as vendor and owner of legal title to the real property under the contract for deed, did not, we assume, join in mortgaging its interest.

A residence was constructed and several materialmen, including Miles Homes and two of the plaintiffs, duly filed mechanics liens against the property.[2] One of the materialmen[3] commenced an action to foreclose its lien. Minn. St. 514.11. Because of the adverse interests of the vendor (L & O), the vendee-mortgagors (the Lynnes), the mortgagee (Miles Homes), and other mechanics lienholders, all were joined as defendants. § 514.10. By this time, an action to foreclose the mortgage had also been instituted. After a consolidated trial and findings, a judgment was entered February 23, 1965, against Lynne and his wife in favor of the materialmen according to their liens and also in favor of Miles Homes on its mortgage. The mechanics lien judgments were decreed to be specific liens against all the rights of the vendor, L & O, in the property, as well as against the rights of the vendees, the Lynnes. See, § 514.06. The judgment for the debt secured by the mortgage was decreed to be a specific lien on the

---

[1] The date and value of this contract is not in the record.

[2] Mechanics liens: Hoyt Nichols and Donald Westling, $1,350; Miles Homes, Inc., $2,468.20; Trygve Larsen, $1,000; Spetz & Berg, Inc., $3,978.67.

[3] Spetz & Berg, Inc.

vendees' interest first and prior to the mechanics liens of the materialmen, which liens were otherwise declared of coordinate priority. § 514.15. Pursuant to § 514.15, sale of the property was ordered. The proceeds of the sale of the vendor's interest were to be applied to the mechanics lien judgments, and the proceeds of the sale of the vendees' interest were to be applied according to priority, first to the mortgage debt and then, proportionately, to the mechanics lien judgments.

At the foreclosure sale, held August 18, 1965, the mechanics lienholder judgment creditors bid in the vendor's (L & O) interest for $1,870, the amount due on the contract for deed. Miles Homes, as the mortgagee judgment creditor, bid in the vendees' interest for $10,471.42, the amount due on the defaulted mortgage. At the sale, the common procedural steps of bidding, making proof of sale to the court, and receiving a certificate of sale were apparently followed by the lienholders.[4] There is no suggestion in the record that any lienholder made any out-of-pocket payment at the time of the sale.

After the sale, the vendees abandoned the property and the mortgagee, Miles Homes, took possession of it, renting it out and receiving rental payments. On September 7, 1965, during the statutory redemption year, L & O served notice on the vendees that the contract for deed was being canceled because the contract payments were delinquent. As of September 20, 1965, the vendees were in arrears $1,053.25 on the contract. Miles Homes, in order to protect its mortgage-judgment interest and its right to possession, paid the arrearage to L & O and continued to make periodic contract payments during the redemption year. L & O and the parties to the lien foreclosure action stipulated that those payments be held in escrow by the attorney of L & O, Joseph Hautman, pending court determination of a motion by Miles Homes (apparently acting in its materialman's interest) that the contract for deed payments be ordered paid over to all the

---

[4] Minn. St. 550.22; Nygren, *Mechanics' Liens in Minnesota,* 26 Bench and Bar of Minn., Feb. 1970, p. 21.

mechanics lienholders on a pro rata basis. This motion was denied on November 30, 1965.

As it had done prior to the November 30 order, Miles Homes continued to make monthly contract for deed payments into the escrow account for the payments due during the redemption year, the final payment being made on July 20, 1966. The escrow fund totaled $1,878.25 at that time.

The year of redemption expired on approximately August 18, 1966, and L & O failed to redeem its vendor's interest because the escrow fund totaled the full amount due on the contract for deed, which fund L & O expected to have paid over to it as indicated by the memorandum accompanying the order of November 30, 1965, denying Miles Homes' motion. Miles Homes redeemed L & O's vendor's interest. See, §§ 581.10 and 580.24. This redemption inured to the benefit of the mechanics lienholders who had bid in the vendor's interest at the execution sale. The plaintiffs [5] herein, as creditors in succession, then redeemed the vendor's interest acquired by Miles Homes by redemption and also redeemed the vendees' interest purchased by Miles Homes at the mortgage-foreclosure sale. See, §§ 581.10; 550.24; 550.25.

In redeeming, and pursuant to an affidavit of additional amounts paid in compliance with § 582.03, plaintiffs were required to pay Miles Homes the amount it had paid on the contract for deed, $1,878.25. Plaintiffs then commenced this suit against L & O and its attorney, Joseph Hautman, to recover the additional amount of $1,878.25 which had been paid into the escrow account. Plaintiffs were denied relief, and they appeal.

The elusive and meager facts now before us, presented by an incomplete stipulation and a wholly inadequate district court

[5] Plaintiff Norton Wallin had acquired the mechanics lien judgments of Spetz & Berg, Inc., and Trygve Larsen and later, with Donald Westling, had acquired the mechanics lien judgment of Miles Homes. Thus, at the time of suit, these two plaintiffs, with Hoyt Nichols as an assignee of other mechanics lien judgment creditors, represented the interest of all lienholder judgment creditors.

file, leave us with at best a marginal lower court record from which to fashion relief. Nevertheless, upon our understanding of the facts, we have no hesitation in affirming the ruling of the district court.

As we understand, plaintiffs argue that the interest represented by their certificate of sale[6] relates back to the date of the execution sale and that, when the vendor fails to redeem the legal title, the purchaser is entitled to the contract payments due the vendor on the contract for deed during the year of redemption and paid by the mortgagee to protect its interest in the vendees' equitable title in the real estate.[7] Barring waste by the possessor of the vendor's interest during his period of redemption,[8] there is no statutory authority or compelling reason why mechanics lienholder judgment creditors who purchase the vendor's interest at the foreclosure sale should be entitled to the contract payments due the vendor during the period of redemption. Certainly § 550.22 on its face does not require this.

The object of the foreclosure sale is to implement the creditor's right to have the property applied to the satisfaction of the debt. When no fee passes at the sale, the creditor who purchases the interest is indistinguishable from any other purchaser, and his rights are subject to the rights of redemption. Fredin v. Cascade Realty Co. 205 Minn. 256, 285 N. W. 615 (1939). At the execu-

---

[6] When there is an execution sale of real property, the purchaser receives a certificate of sale which, if duly executed, acknowledged, and recorded, operates, upon expiration of the period of redemption, "as a conveyance to the purchaser of all the right, title, and interest *of the person whose property is sold in and to the same, at the date of the lien upon which the same was sold.*" (Italics supplied.) Minn. St. 550.22.

[7] Our decisions recognize that under a sale of land by contract for deed, while the vendor holds legal title and the vendee holds equitable title, the relationship of vendor and vendee is analogous to that of mortgagee and mortgagor; i. e., the property is security for the purchase price and the vendor is in effect a lienor. See, State ex rel. Blee v. City of Rochester, 260 Minn. 151, 109 N. W. 2d 44 (1961); Note, 50 Minn. L. Rev. 331, 339.

[8] See, Whitney v. Huntington, 34 Minn. 458, 26 N. W. 631 (1886).

tion sale the purchaser of a vendor's interest in a contract for deed acquires a lien upon the rights of the vendor, and on failure of the vendor to redeem, the purchaser, through his certificate of sale, receives all right, title, and interest of the vendor existing at the end of the period of redemption. The vendor has the right to collect contract for deed payments during the period of redemption, but he loses this right upon failure to redeem within the time allotted, at which point title passes to the execution-sale purchaser, who becomes a purchaser for value.[9] In the case at bar, even though plaintiffs were purchasers at the execution sale, they received title when, by right of priority pursuant to §§ 581.10 and 580.24, they redeemed following the prior redemption by the mortgagee, Miles Homes. The lien creditor who redeems in succession acquires through his certificate of redemption what benefit would otherwise accrue to the foreclosure-sale purchaser. Powers v. Sherry, 115 Minn. 290, 132 N. W. 210 (1911); Gates v. Ege, 57 Minn. 465, 59 N. W. 495 (1894); and see, Nygren, *Mechanics' Liens in Minnesota,* 26 Bench and Bar of Minn., Feb. 1970, p. 21.

Contrary to plaintiffs' argument, we do not find this result inequitable. Defendant L & O has properly received only the payments due under the contract for deed for the period during which it had the right to redeem. While the plaintiffs bid the value of the vendor's interest for $1,870, this interest was first redeemed by Miles Homes as a priority creditor. This prior redemption benefited the plaintiff-creditors, to the extent of $1,870, and they then redeemed from Miles Homes according to their right in succession, thus canceling that benefit they had received by Miles Homes' prior redemption. The plaintiffs also redeemed the mortgage foreclosure bid in by Miles Homes at

[9] See, Leonzal v. Lethert, 226 F. Supp. 791 (D. Minn. 1964); W. T. Bailey Lbr. Co. v. Hendrickson, 185 Minn. 251, 240 N. W. 666 (1932); Parke v. Hush, 29 Minn. 434, 13 N. W. 668 (1882); 49 C. J. S., Judgments, § 480.

$10,471.42 and were further required to pay the additional $1,878.25 which Miles Homes had paid to protect the vendees' interest in the property (upon which the mortgage was outstanding). Without these payments, L & O could have canceled the vendees' interest, severed the mortgage security, and, had it chosen to do so, could have redeemed plaintiffs' purchase for $1,870—well below the value of their total claim. By protecting its rights, the mortgagee, Miles Homes, permitted plaintiffs to redeem the entire property through succession for a net amount of approximately $12,000. See, W. T. Bailey Lbr. Co. v. Hendrickson, 185 Minn. 251, 254, 240 N. W. 666, 667 (1932).

The purpose of the succession statute, § 581.10, is to preserve the land, to as great an extent as possible, for satisfaction of all the liens against it. Accordingly, the statute provides each successive lienor the right to redeem by paying the amount the predecessor paid in redeeming. In so doing, the last successor can apply his own claim to any excess in value of the property over and above the amount he paid to redeem. Moore v. Penney, 141 Minn. 454, 170 N. W. 599, 3 A. L. R. 161 (1919); Cuilerier v. Brunelle, 37 Minn. 71, 33 N. W. 123 (1887). See, also, Betcher v. Ebert, 169 Minn. 337, 211 N. W. 323 (1926). In the absence of any allegation as to the market value of the property received, we may infer that it was sufficient to pay plaintiffs the total of their mechanics lien judgment, notwithstanding the intervening encumbrance of approximately $12,000 which they paid to redeem.

If it should happen that the value of property is insufficient, it does not follow that the plaintiffs have a right to the contract payments made by Miles Homes to the vendor. While redemption is satisfaction of the debt only to the extent of the value of the property redeemed less the sum paid to effect the redemption, Northland Pine Co. v. Northern Insulating Co. 145 Minn. 395, 177 N. W. 635 (1920), the successive mechanics lien redemption-

er has a claim against the original debtor for any unrealized difference, even though by the redemption the debtor is divested of any title to the real property. Crown Iron Works Co. v. Melin, 159 Minn. 198, 198 N. W. 462 (1924).

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.