**CITY OF ST. PAUL by the HOUSING AND REDEVELOPMENT AUTHORITY OF the CITY OF ST. PAUL, Minnesota, Appellant,**

v.

**ST. ANTHONY FLATS LIMITED PARTNERSHIP, et al.,**
**Respondents.**

No. C0-93-2461.

Court of Appeals of Minnesota.

May 31, 1994.

Review Denied Aug. 24, 1994.

Timothy Marx, St. Paul City Atty., Edward P. Starr, Asst. City Atty., St. Paul, for appellant.

Todd H. Johnson, Oliver & Johnson, Minneapolis, MN, for respondents.

## OPINION

CRIPPEN, Judge.

Appellant City of St. Paul Housing and Redevelopment Authority, a mortgagee, challenges the trial court's summary judgment for respondent St. Anthony Flats Limited Partnership, the mortgagor, in an action initiated by appellant to collect on a $200,000 note. The trial court ordered judgment upon determining that appellant had elected the remedy of mortgage redemption and could not thereafter hold respondent personally liable on the note.

### FACTS

St. Anthony owned a building in St. Paul encumbered by three mortgages. The first and third mortgages, in favor of Drovers First American Bank of South St. Paul, secured construction loans of $650,000 and $280,000, respectively. The second mortgage in favor of appellant HRA secured a con-

struction loan of $200,000. As a condition of making the last construction loan and accepting the third mortgage, Drovers required St. Anthony and HRA to join the bank in a parity agreement.

The purpose of the parity agreement was to make the second and third mortgages "of equal rank and coordinate priority." The agreement designated Drovers as the collection agent for the payments on all three loans. It provided that in the event that Drovers foreclosed on the first mortgage and purchased the property at the foreclosure sale, the following procedures for redemption were to be followed: To preserve its rights to redeem from the first mortgage, appellant would record and serve on Drovers a notice of intention to redeem from the first mortgage. Upon receipt of the notice, Drovers could record and serve on appellant a notice of intention to redeem from the first and second mortgages. The parties would then exchange certificates of redemption.

Following the exchange of notices and certificates of redemption under the parity agreement, Drovers would acquire title to the property and offer to sell it, either to appellant, who had a first right of refusal, or to a third party if appellant declined. If a third party purchased the property, then the proceeds of the sale would be applied against St. Anthony's debts secured by the mortgages. In the event that the proceeds were insufficient, they would be distributed first to satisfy the note secured by the first mortgage, and the remainder distributed pro rata to satisfy the notes secured by the second and third mortgages.

Respondent defaulted on the mortgages and Drovers proceeded to foreclose the first mortgage by action. In January 1992, Drovers successfully bid $600,000 for the property at the foreclosure sale. In March, the sale was confirmed by court order. In May, pursuant to the terms of the parity agreement, HRA and Drovers exchanged notices of intention to redeem. In August, HRA initiated an action on the $200,000 note against St. Anthony.

In September, Drovers and HRA exchanged certificates of redemption, but in accord with the parity agreement neither paid cash to the other. In October, Drovers entered into a purchase agreement for sale of the property to St. Anthony for $636,000. Drovers offered the property for sale to HRA on the same terms. In November, the HRA declined the offer, and expressed its intention to proceed against St. Anthony personally for the amount due on the secured note.

In April 1993, St. Anthony moved for summary judgment. In October, the trial court granted the motion on grounds that HRA had "conclusively elected the remedy of foreclosure and redemption," and was barred from pursuing an action on the note.

## ISSUES

1. Did HRA actually redeem from the foreclosure sale when, pursuant to the terms of the parity agreement, it recorded and served on Drovers a notice of intention to redeem and subsequently received a certificate of redemption from Drovers indicating that appellant had "paid" the full amount due on the note secured by the first mortgage?

2. If HRA redeemed from the first mortgage and Drovers in turn redeemed from the first and second mortgages, then was HRA barred from seeking a deficiency judgment against St. Anthony for the difference between the debt owed to HRA by St. Anthony and the amount distributed to the HRA from the proceeds of the property sale?

## ANALYSIS

 This case involves construction and application of the mortgage foreclosure statutes and the parity agreement. A question of statutory interpretation is a question of law for de novo review. *State v. Zacher*, 504 N.W.2d 468, 470 (Minn.1993). Likewise, the construction and effect of contracts are questions of law. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn.1979).

1. Redemption

 Redemption by a junior mortgagee or lienholder is the right to repurchase from the buyer property that was sold in satisfaction of a judgment or other claim against the debtor. *See Sprague v. Martin*, 29 Minn.

226, 231, 13 N.W. 34, 37 (1882); *see also* Minn.Stat. § 580.24 (1992) (redemption by creditor). Redemption is accomplished by paying "all liens prior to the lienholder's own held by the person from whom redemption is made." Minn.Stat. § 580.24.[1] The redemptioner must pay "the amount required by law for such redemption," Minn.Stat. § 580.25 (1992), which is defined as the amount that the buyer paid at the foreclosure sale, plus interest from the time of sale, together with any other taxes and costs as provided by law, plus the amounts due on all senior liens. Minn.Stat. §§ 580.24 (redemption by creditor), 582.03 (1992) (purchaser may pay taxes and other expenses due). Upon receipt of full payment, the person from whom the property is redeemed issues a certificate of redemption to the redemptioner. Minn.Stat. § 580.26 (1992). A certificate of redemption provides prima facie evidence that a redemption occurred and that all the facts recited in such a certificate relating to the act of redemption are true. *Willis v. Jelineck,* 27 Minn. 18, 24, 6 N.W. 373, 375 (1880).

■ The factual recitations contained in the certificates of redemption exchanged between St. Anthony and Drovers establish that on September 14, 1992, Drovers "received" from HRA the sum of $618,821.97 "in full redemption" of the property from the mortgage foreclosure sale.[2] On September 30, 1992, HRA "received" from Drovers the sum of $806,226.06 "in full redemption" of the property from the mortgage foreclosure sale. These recitations create the presumption that HRA, as the senior lienholder on the property after the foreclosure sale, redeemed from the sale by paying Drovers the "amount required by law," that is, the amount that Drovers had bid at the mortgage foreclosure sale, plus interest and costs. Drovers, as the junior lienholder, in turn redeemed from HRA by paying the amount bid at the mort-

gage foreclosure sale, plus the outstanding amount due on the second mortgage, plus interest and costs.

■ HRA argues that it did not in fact complete a redemption, because it "stopped short of the ultimate fulfillment of the terms of the Parity Agreement, which was to take title and possession of the foreclosed property, sell it, and apply the sales proceeds to its debt on a shared basis with the Bank." But nothing in the terms of the parity agreement supports the notion that redemption would not be valid unless those events had occurred. Nor does Minnesota law impose such a requirement. A certificate of redemption "operates as an assignment of the right acquired under [the mortgage foreclosure] sale." Minn.Stat. § 580.27 (1992). Passage of legal title and physical control of the property to the redemptioner is not a precondition for a valid redemption.

The relevant right that HRA acquired by exchanging certificates of redemption with Drovers was a contractual right to choose between purchasing title or sharing in the proceeds of a future resale. Simply because HRA opted to allow Drovers to sell the property to a third party and distribute the sales proceeds does not negate the fact that HRA acquired the right to choose this option only as a result of completing the redemption remedy.

### 2. Satisfaction of Claims

■ The purpose of a real estate mortgage is to pledge property as security for the payment of a debt. *Sprague,* 29 Minn. at 229, 13 N.W. at 36. The mortgagee has two distinct remedies if the mortgagor defaults. The mortgagee may either sue for a personal judgment on the note, or rely on the security of the mortgage to sell the property and apply the proceeds of the sale to payment of

---

1. Mortgage foreclosure by action is governed by Minn.Stat. ch. 581. Minn.Stat. ch. 580 deals with foreclosure by advertisement. But Minn. Stat. § 581.10 (1992) provides for creditor redemption after foreclosure by action "in the order and manner specified in section 580.24."

2. St. Anthony correctly points out that the mere fact that no money actually changed hands with the certificates of redemption does not alter the

fact that redemption actually occurred. In foreclosure sales, the buyer, if it is the person who foreclosed the mortgage, typically "bids" the amount of the debt secured by that mortgage and pays no cash to obtain the property. Similarly, in the instant case, the parties paid consideration for the certificates of redemption in the form of contractual rights, rather than in the form of cash.

the debt. *Winne v. Lahart,* 155 Minn. 307, 309–10, 193 N.W. 587, 589 (Minn.1923).

After payment of costs, sale proceeds in a foreclosure by action are applied against the debt secured by the mortgage. Minn.Stat. §§ 580.09, 580.225 (1992). In choosing between mortgage foreclosure and an action on the note, the mortgagee may pursue either or both remedies, as long as there is no double recovery on the debt. *First Nat'l Bank of Osakis v. Flynn,* 190 Minn. 102, 106, 250 N.W. 806, 808 (1933). This is in accord with the general rule of law that a mortgagee is permitted to assert any claim against a debtor that is not inconsistent with the remedy of foreclosure. *See Kooda Bros. Constr. v. United Fed. Sav. & Loan,* 400 N.W.2d 407, 409 (Minn.App.1987) (citing *Bond v. Charlson,* 374 N.W.2d 423, 431 (Minn.1985)).

■ Just as mortgage foreclosure is a process by which mortgaged property is applied to payment of debt, so is a creditor's redemption from the mortgage a proceeding for enforcement of the creditor's lien. *See Nichols v. L & O, Inc.,* 293 Minn. 17, 22, 196 N.W.2d 465, 469 (1972); *Sprague,* 29 Minn. at 231, 13 N.W. at 37. Redemption, like mortgage foreclosure, is a concurrent remedy with a personal action on the debt. Redemption is satisfaction of the debt only to the extent of the value of the property redeemed less the sum paid to effect the redemption. *Nichols,* 293 Minn. at 23–24, 196 N.W.2d at 469.

■ If the proceeds of a foreclosure sale do not fully satisfy the debt secured by a mortgage foreclosed by action, then the mortgagee may proceed to recover a deficiency judgment against the debtor for the remainder. Minn.Stat. § 582.30 (1992) (deficiency judgments); *National City Bank of Minneapolis v. Lundgren,* 435 N.W.2d 588, 593 (Minn.App.1989), *pet. for rev. denied* (Minn. Mar. 29, 1989). Likewise, if the rights that a lien redemptioner obtains are less in value than the amount of the judgment used as a basis for redemption and the amount paid to effect it, then the redemptioner may sue to recover the difference. *Crown Iron Works Co. v. Melin,* 159 Minn. 198, 199, 198 N.W. 462, 462 (1924) (citing *Northland Pine Co. v. Northern Insulating Co.,* 145 Minn. 395, 177 N.W. 635 (1920)); *see also Sprague,* 29 Minn. at 233–34, 13 N.W. at 38 (extent of satisfaction of debt, as measured by value of property, is necessarily left for adjudication).

Normally, when a junior lienholder redeems property after a foreclosure sale, the effect of redemption is that the senior lienholders realize complete satisfaction of their secured claims. They cannot sue the debtor because to do so would afford them double recovery and the remedy would be inconsistent with mortgage foreclosure and redemption. In the absence of an agreement to the contrary, only the final redemptioner from the foreclosure sale may have recourse to a deficiency judgment, because all senior liens would have been fully satisfied. But where the debtor and the lienholders enter into a parity agreement which provides for the exchange of certificates of redemption for contractual rights to receive pro rata shares of the proceeds from resale of the property, redemption does not necessarily satisfy the senior liens, because by agreement their priority is compromised. Under those circumstances, neither the redemptioner nor the senior lienholders are precluded from suing on their notes to obtain deficiency judgments. The total potential exposure of the debtor remains unchanged, and the amount of the deficiency otherwise attributable only to the final redemptioner is distributed among the lien claimants.

The sales proceeds remaining after satisfaction of the first mortgage debt, $17,478.03 ($636,300 − $618,821.97), were insufficient to fully pay the amount due on the debt secured by the second mortgage, $187,404.09 ($806,226.06 − $618,821.97), let alone the unspecified amount due on the debt secured by the third mortgage. On remand, the trial court must determine the amount of the deficiency judgment that HRA may claim against St. Anthony. This shall be the amount due to appellant on the second mortgage, reduced by its pro rata share of the sale proceeds distributed to appellant by Drovers.

## DECISION

The trial court properly determined that HRA had redeemed the property from the

mortgage foreclosure sale. But, pursuant to the terms of the parity agreement, HRA's redemption did not preclude it from seeking a deficiency judgment against St. Anthony in an amount equal to the net outstanding amount due on the second mortgage note after distribution of the property sale proceeds.