JPMORGAN CHASE BANK,
N.A., Respondent,

v.

Trevor J. ERLANDSON,
et al., Appellants,

MERS as Nominee for Homecomings
Financial, LLC, et al.,
Defendants.

No. A12–0045.

Court of Appeals of Minnesota.

Sept. 4, 2012.

Marc D. Simpson, Calvin P. Hoffman, Leonard, Street, and Deinard, Minneapolis, Minnesota for respondent.

William B. Butler, Butler Liberty Law, LLC, Minneapolis, Minnesota for appellants.

Considered and decided by WRIGHT, Presiding Judge; ROSS, Judge; and HOOTEN, Judge.

## OPINION

HOOTEN, Judge.

In this appeal from a mortgage foreclosure by action, appellant mortgagors argue that a fact question exists regarding whether the promissory note associated with the mortgage had been properly assigned to respondent bank at the time the bank foreclosed the mortgage. Appellants argue that, because such a fact question exists, the district court erred (1) in granting summary judgment to allow the bank to foreclose the mortgage; and (2) in confirming the bank's purchase of the premises at the foreclosure sale by credit bid.

The bank, as the owner of legal title to the mortgage, can foreclose its mortgage by action even if does not hold the promissory note associated with that mortgage. Further, because the bank is the successor to the original mortgagee, the bank could, at the foreclosure sale, make a credit bid in the amount of the debt secured by the premises. Therefore, we reject appellants' arguments and affirm the district court.

## FACTS

In November 2006, appellants Trevor and Melissa Erlandson borrowed money from Homecomings Financial, LLC (Homecomings Financial), executed a promissory note in favor of Homecomings Financial, and secured the note with a mortgage naming the nominee of Homecomings Financial, Mortgage Electronic Systems, Inc., (MERS), as the mortgagee. Respondent JPMorgan Bank, N.A., was assigned the legal title to the mortgage. Appellants defaulted on their repayment obligations and the bank sued to foreclose the mortgage by action. *See* Minn.Stat. §§ 581.01.12 (2010). As the purported owner of the promissory note, the bank also sought a deficiency judgment against appellants on the note.[1] Appellants answered the foreclosure complaint, but not the bank's discovery. By order signed May 10, 2011, the district court granted the bank's motion for summary judgment against appellants, awarded the bank a decree of foreclosure, and directed the sheriff to sell the mortgaged premises. The order also awarded the bank a money judgment of $159,610.23, which was the principal amount in default on the note, together with interest and other sums that were payable to the bank under the note and mortgage. The district court noted that the bank reserved the right to seek a deficiency judgment against appellants. The order states that appellants did not respond to the bank's motion for summary judgment and did not appear at the hear-

---

1. While the bank maintains that it owned and possessed the original promissory note when it foreclosed the mortgage, for purposes of this appeal we accept appellants' claims that there was at least a genuine issue of material fact as to whether the bank owned the promissory note at the time of the foreclosure.

ing on that motion. On May 13, 2011, judgment was entered on this order.

With new counsel, appellants moved the district court to vacate the summary judgment. Minn. R. Civ. P. 60.02. Appellants asserted that their failure to respond to the bank's discovery and summary judgment motion was excusable, and that the bank could not foreclose the mortgage, nor could it recover on the note, because the bank had failed to show that it had been assigned the note associated with the mortgage. The district court partially granted appellants' motion by vacating the money judgment that had been awarded to the bank and by reopening discovery relative to the parties' disputes about the note. However, the district court denied appellants' motion to vacate the findings of fact, conclusions of law, and order pertaining to the foreclosure, and, instead, reaffirmed its prior directive that the sheriff sell the premises. Judgment was entered on this order on July 14, 2011.

At the sheriff's sale, the bank bought the foreclosed premises with a credit bid of $98,540. Waiving its claim for a deficiency judgment, the bank then moved the district court for an order confirming the sheriff's sale. Appellants opposed the bank's motion to confirm the sheriff's sale, asserting that the foreclosure was defective because the bank failed to show that it had obtained any rights to the note and therefore did not have the right to foreclose or purchase the premises at the sheriff's sale. The district court confirmed the sheriff's sale, reduced the money judgment against appellants from $159,610.23 to $98,540 because the bank waived its deficiency and other note-related claims, directed that the court administrator "fully satisfy the amended money figure ... such that there is no surplus or any deficiency," and dismissed all other claims in the case. Judgment was entered on this order on

December 20, 2011 from which appellants now appeal.

## ISSUES

I. Did the district court err in granting the bank summary judgment allowing it to foreclose the mortgage?

II. Did the district court err in determining that the bank could make a credit bid for the property without showing that it holds the note associated with the mortgage that was foreclosed?

## ANALYSIS

### I.

On appeal from summary judgment, an appellate court addresses "whether any genuine issues of material fact exist and whether the district court erred in its application of the law." *Bearder v. State,* 806 N.W.2d 766, 770 (Minn.2011) (quotation omitted). In doing so, appellate courts "construe the facts in the light most favorable to the party opposing summary judgment and review questions of law, including the interpretation of statutes, de novo." *Id.* at 770. Summary judgment must be granted if "there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03; *see Zappa v. Fahey,* 310 Minn. 555, 556, 245 N.W.2d 258, 259–60 (1976) (stating, for summary judgment purposes, that "[a] material fact is one of such a nature as will affect the result or outcome of the case").

■ Appellants argue that, to foreclose a mortgage, the foreclosing entity must possess both the mortgage and the note associated with that mortgage, or that the foreclosing entity be acting on behalf of one who possesses both the mortgage and

the associated note.[2] Therefore, appellants argue, because this record shows that a factual question exists regarding whether the bank was properly assigned the note associated with the mortgage, the district court erred in granting the bank summary judgment allowing it to foreclose the mortgage. We reject this argument because it is inconsistent with Minnesota law.

■ When a purchaser of real estate borrows money to finance the purchase, the purchaser usually signs two distinct, but related, documents. One is a promissory note, which represents the purchaser's promise to repay the lender the amount of the loan, plus interest. The second is a security instrument, usually a mortgage, which conveys to the mortgagee—who is, at least initially, usually the lender—an interest in the property as security for the purchaser's obligations under the promissory note. *See Jackson v. Mort. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 493 (Minn.2009) (discussing the mortgage process). As explained in *Jackson*, since the security instrument is incident to the debt represented by the note and can have no separate or independent existence apart from the debt it secures, it was long held that the transfer of the debt represented by the note carried with it an assignment of the security instrument or mortgage. *Id.* at 494 (citing *Hatlestad v. Mut. Trust Life Ins. Co.*, 197 Minn. 640, 647, 268 N.W. 665, 668 (1936) and *Hayes v. Midland Credit Co.*, 173 Minn. 554, 556, 218 N.W. 106, 107 (1928)). These principles are the basis for appellants' argument that, as a prerequisite to the foreclosure of a mortgage, the foreclosing entity must show either that it owns *both* the mortgage being foreclosed *and* the note associated with that mortgage, or that it is acting on behalf of one who does.[3]

In an extensive discussion of the advent of MERS and the Minnesota caselaw ad-

---

**2.** The mortgagors appeal from the December 20, 2011 judgment confirming the foreclosure sale, but challenge the propriety of the May 13, 2011 judgment authorizing the bank to foreclose the mortgage. The bank argues that challenges to the May 13, 2011 judgment are not timely. *See* Minn. R. Civ.App. P. 104.01, subd. 1 (allowing an appeal to a judgment only within 60 days of its entry). But, on the mortgagors' motion, the district court, by judgment on July 14, 2011, vacated, and left open, portions of the May 13, 2011 judgment. On this record, the July 14, 2011 judgment rendered the May 13, 2011 judgment nonfinal and non-appealable. *See T.A. Schifsky & Sons, Inc. v. Bahr Const., LLC*, 773 N.W.2d 783, 788 (Minn.2009) (noting that, generally, to be appealable, a judgment must be final and that a final judgment is one that ends the litigation on the merits, leaving the court nothing to do but execute the judgment). The issues that were left open in the July 14, 2011 judgment were finally resolved in the December 20, 2011 judgment that also confirmed the foreclosure sale. Because Minn. R. Civ. App. P. 104.01, subd. 1 generally precludes appeals from a partial judgment until final judgment has been entered on all remaining claims, and because the mortgagors timely appealed the December 20, 2011 judgment, we address the mortgagors' challenges to the May 13, 2011 judgment.

**3.** These types of arguments have been referred to as "show me the note" claims. *See Welk v. GMAC Mortg., LLC*, 850 F.Supp.2d 976, 980 (D.Minn.2012) ("A plaintiff bringing a show-me-the-note claim generally argues that, because the entity that holds her mortgage . . . is not the same as the entity that holds her note . . . the mortgage on her home or the foreclosure of that mortgage is invalid."); *see also Stein v. Chase Home Fin., LLC*, 662 F.3d 976, 978 (8th Cir.2011) ("A 'show me the note' plaintiff typically alleges a foreclosure is invalid unless the foreclosing entity produces the original note."). Appellants' "show me the note" argument, however, is inconsistent with *Jackson*, which ruled that the holder of legal title to a security instrument can foreclose that security instrument by exercising a power of sale in the security instrument, even if that entity does not own the associated note. 770 N.W.2d at 500–01.

dressing the relationship between a promissory note and the legal and equitable interests in security instruments, *Jackson* explained that MERS is an electronic registration system that "acts as the nominal mortgagee for the loans owned by [members of that system,]" that members of the system "include originators, lenders, servicers, and investors, [and that the system allows its members] to assign home mortgage loans [among its members] without having to record each transfer in the local land recording offices where the real estate securing the mortgage is located." *Id.* at 490. It is because MERS internally tracks the assignments of the mortgage loans among its members while remaining the nominal mortgagee of record that transfers among MERS members need not be recorded in the local land record offices. *Id.*

*Jackson* noted that this more streamlined system "improve[d] the efficiency and profitability of the primary and secondary mortgage markets," so that an originating mortgage lender may sell a mortgage loan on the secondary market to investors which could resell the loan, without the time, money and paperwork associated with recording the documents associated with each assignment. *Id.* "Once registered, MERS serves as the mortgagee of record for all loans in its system." *Id.*

MERS was enabled by the legislature's enactment of what is known as the "MERS statute." Minn.Stat. § 507.413 (2010); *Jackson,* 770 N.W.2d at 494–95 (labeling this section the MERS statute); *see also* 2004 Minn. Laws ch. 153, § 2, at 7677

(enacting the MERS statute). Under the MERS statute, a mortgage may be recorded in the name of a mortgagee as the nominee for a third party and the nominee has the authority to act on behalf of the third party in any foreclosure proceeding. Minn.Stat. § 507.413(a). As *Jackson* recognized, "[b]y acting as the nominal mortgagee of record for [all of] its members, MERS has essentially separated the promissory note and the security instrument, allowing the debt to be transferred [among the members of MERS] without an assignment of the security instrument." 770 N.W.2d at 494.

 In holding that MERS has authority to foreclose as a nominee for the mortgagee, the court reasoned that "an assignment of the promissory note operates as an *equitable* assignment of the underlying security instrument," but it does not convey the *legal* title to that instrument, which remains in MERS. *Id.* at 497. Thus, equitable title to the security instrument follows the note, while legal title is held by the entity that actually owns the security instrument. *See id.* at 500 (" '[O]ur own decisions have repeatedly recognized' the doctrine that the debt, and consequently the real ownership of the security instrument, may be in one person, 'while what may be termed the legal title' to the security instrument is in another." (quoting *Burke v. Backus,* 51 Minn. 174, 178–79, 53 N.W. 458, 459 (1892))). " '[T]he power of sale [granted in a security instrument] must be exercised in the name of the party who has the legal title to the instrument.' " *Id.* (quoting *Burke,* 51 Minn. at 179, 53 N.W. at 459).[4]

4. *See Stein,* 662 F.3d at 980 (interpreting Minnesota law and *Jackson* to be that "the right to enforce a mortgage through foreclosure by advertisement lies with the legal, rather than equitable holder, of the mortgage[.] ... Thus, [the assignee of the mortgage] was

the party entitled to commence a foreclosure by advertisement under Minnesota law, even if the promissory note (and the corresponding equitable interest in the mortgage) had been transferred to someone else"); *Welk,* 850 F.Supp.2d at 984–85 ("[*Jackson* ] flatly reject-

Appellants' counsel argued at oral argument before this court that *Jackson* is distinguishable from the current case because *Jackson* involved a foreclosure by advertisement while this case involves a foreclosure by action. Appellants' counsel, however, did not provide any reason why the analysis in *Jackson*—indicating that an owner of legal title to a mortgage could foreclose that mortgage by advertisement without also owning the associated note—would not be equally applicable in a foreclosure by action. Nor do we see a reason for drawing this distinction.

 A mortgage may be foreclosed either by advertisement or by action. "A foreclosure by advertisement takes place without recourse to the courts, and is a proceeding *in pais, ex parte,* and *in rem.*" *Norwest Bank Hastings Nat'l Ass'n v. Franzmeier,* 355 N.W.2d 431, 433 (Minn. App.1984). Foreclosure by advertisement "was devised to avoid the delay and expense of judicial proceedings" associated with foreclosure by action. *Soufal v. Griffith,* 159 Minn. 252, 256, 198 N.W. 807, 809 (1924). "Because foreclosure by advertisement is a purely statutory creation," and does not require court involvement, "the statutes are strictly construed." *Jackson,* 770 N.W.2d at 494 (citing *Moore v. Carlson,* 112 Minn. 433, 434, 128 N.W. 578, 579 (1910)). A prerequisite to foreclosure by advertisement is that the mortgage, and all of its assignments, be recorded. Minn. Stat. § 580.02(3) (2010). By requiring the recording of the legal title to the mortgage, the plain intent of the statute was to make the mortgagee's rights and interest in the mortgage "beyond reasonable question" and a "matter of record." *Jackson,* 770 N.W.2d at 497–98 (quotations omitted); *see also Soufal,* 159 Minn. at 255, 198 N.W. at 808. There is no requirement, however, that "mere equitable" interests be recorded. *Jackson,* 770 N.W.2d at 498.

 A mortgage "foreclosure by action requires a judicial decree and approval of sale and is an *in personam* proceeding, although it is in the nature of a proceeding *in rem* since its purpose is to enforce a lien on the mortgaged property." *Norwest Bank Hastings Nat'l Ass'n,* 355 N.W.2d at 433. If there are defects in the recording of legal title to a mortgage, the entity seeking to foreclose a mortgage "must resort to foreclosure by action." *Soufal,* 159 Minn. at 256, 198 N.W. at 809.

 If a mortgagor defaults, the mortgagee and holder of the promissory note may sue for a personal judgment on the note or, relying on the security of the mortgage, may sell the property and apply the proceeds of the sale to payment of the debt. *City of St. Paul v. St. Anthony Flats Ltd. P'ship,* 517 N.W.2d 58, 61–62 (Minn.App.1994), *review denied* (Minn. Aug. 24, 1994). "In choosing between mortgage foreclosure and an action on the note, the mortgagee may pursue either or both remedies, as long as there is no double recovery on the debt." *Id.* at 62. Consistent with the legal principles as set forth in *Jackson,* the right to foreclose by action can be exercised by the owner of legal title to the mortgage—or an entity acting on behalf of the owner of legal title to the mortgage—regardless of whether that entity also is the owner or possessor of the associated promissory note.

The current appeal involves a foreclosure by action in which it is undisputed that the foreclosing bank had legal title to the mortgage at the time of the foreclo-

---

ed the core argument made by plaintiffs in this case and in every show-me-the-note case: that an entity that holds only legal and record title to the mortgage—and not equitable title—cannot foreclose.").

sure. Even if there had been a dispute about the bank's legal title to the mortgage, because this was a foreclosure by action, that dispute could have been raised in, and resolved by, the district court as part of the foreclosure litigation. In *Jackson*, the mortgagors claimed that they were disadvantaged by the fact that only MERS, as the nominee of the mortgagee and its assigns and successors, was required to record the mortgage and, as a result, the mortgagors were not able to know the "true" identity of the lender or owner of the promissory note. 770 N.W.2d at 501–02. Ignoring the fact that ownership or possession of the note associated with a security instrument is not relevant to identifying who has the authority to foreclose that security instrument, concerns about whether the entity seeking to foreclose a mortgage by action actually has the authority to do so do not exist in a foreclosure by action because the entity seeking to foreclose the mortgage is generally the plaintiff with regard to the foreclosure. If there is a dispute about that entity's authority to foreclose the mortgage, mortgagors, armed with their general right to due process of law, as well as the discovery rights set out in the rules of civil procedure, can litigate the question. *See* Minn.Stat. § 581.01 (2010) (stating that, unless displaced by provisions of chapter 581, the rules of civil procedure

apply to "[a]ctions for the foreclosure of mortgages").

Here, the bank, as the undisputed owner of legal title to the mortgage, exercised its independent remedy to foreclose under well-established principles of real-estate law that pre-exist the holding in *Jackson*. *See Lundberg v. Nw. Nat'l Bank of Minneapolis*, 299 Minn. 46, 48, 216 N.W.2d 121, 123 (1974) (noting that a mortgage "may be foreclosed even though an action on the note is barred" (citing *Johnson v. Howe*, 176 Minn. 287, 223 N.W. 148 (1929); *Welbon v. Webster*, 89 Minn. 177, 94 N.W. 550 (1903); *Conner v. How*, 35 Minn. 518, 29 N.W. 314 (1886))).

Appellants argue that allowing the bank to foreclose the mortgage without showing that it also possesses the associated note exposes mortgagors to double liability on the mortgage debt if, after a foreclosure, the owner or possessor of the note—or one acting on behalf of the owner or possessor of the note—starts a separate action against the mortgagors seeking to recover on the note.[5] We reject that argument for two reasons. First, here, the bank waived any claims based on the note. Therefore, these mortgagors will not be liable to the bank on any future claims based on the note. Second, as noted above, caselaw prohibits double recovery on the debt associated with a mortgage. *City of St. Paul*, 517 N.W.2d at 62. Moreover, had a deficiency judgment been sought here,[6] appel-

---

**5.** If this were a foreclosure by advertisement, the amount received from a foreclosure by advertisement is deemed to be "full satisfaction of the mortgage debt, except as provided in section 582.30." Minn.Stat. § 580.225 (2010). If the proceeds of the foreclosure by advertisement are less than the amount owed under a promissory note, and the mortgage "has a redemption period of six months under section 580.23, subdivision 1, or five weeks under section 582.032," the mortgagee does not have the right to a deficiency judgment against the mortgagors. Minn.Stat. § 582.30, subd. 2 (2010).

**6.** In a foreclosure by action, the district court is directed to enter judgment for the amount due under the mortgage, along with costs and disbursements, and to order that the real estate be sold by the sheriff. Minn.Stat. § 581.03 (2010). Upon the report of sale and confirmation of the sale by the court, "the court administrator shall enter satisfaction of the judgment to the extent of the sum bid for the premises, less expenses and costs." Minn.Stat. § 581.09 (2010); *see* Minn.Stat. § 581.08 (2010) (describing the confirmation process). Further, "[t]he amount entered is full satisfaction of the judgment unless a defi-

lants would have been afforded all of their rights in defending such action, including the rights to not be subject to double recovery, to contest whether the party seeking to recover on the note was an owner or possessor of the note in question, and to seek to join other parties who appellants or the bank claim have an interest in the note.

Even where a deficiency judgment is not waived, any potential disputes regarding a possible deficiency judgment do not cause a court-ordered mortgage foreclosure to be invalid. This is because any dispute between the possessor of legal title to a mortgage (*i.e.,* the entity with the authority to foreclose the mortgage) and the entity possessing equitable title to that mortgage (*i.e.,* the note-holder), does not alter the status of the mortgagor for purposes of foreclosure. *See Jackson,* 770 N.W.2d at 501 ("[A]ny disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement.").

Appellants did not cite any authority from Minnesota in support of their claims that only the holder or possessor of the note, rather than the entity with legal title to a mortgage, can or must foreclose that mortgage. Although appellants' "show me the note" theory has been resoundingly rejected by the federal district and appellate courts in the Eighth Circuit,[7] appellants seek support for their position from an opinion of the Bankruptcy Appellate

Panel for the Eighth Circuit, *In re Banks,* 457 B.R. 9 (8th Cir. BAP 2011). This reliance is misplaced.

First, *Banks* is distinguishable; it involved whether there was an issue of fact regarding whether a claimant wanting to enforce a note had possession of the original note. 457 B.R. at 12. Here, the validity of the foreclosure depends on possession of legal title to the mortgage, not possession of the note. Second, when resolving substantive issues of Minnesota law, federal district courts are bound by the decisions of the Minnesota appellate courts. *Welk,* 850 F.Supp.2d at 984 (citing *Integrity Floorcovering, Inc. v. Broan–Nutone,* 521 F.3d 914, 917 (8th Cir.2008)). But, there is even a question about whether decisions of a Bankruptcy Appellate Panel are binding upon federal district courts, much less state courts. *Id.* at 987 n. 5. *Banks* also did not directly deal with the precedent set forth in *Jackson,* which is legally binding upon this court. *See State v. M.L.A.,* 785 N.W.2d 763, 767 (Minn.App.2010) (stating that the court of appeals is "bound by supreme court precedent and the published opinions of the court of appeals"), *review denied* (Minn. Sept. 21, 2010).

Citing a mortgage provision allowing the lender to "invoke the power of sale," appellants also argue that the note and mortgage avoid the possibility of a double recovery by reserving the remedy of exercising the power of sale in the mortgage to a single entity, apparently the

---

ciency is allowed under section 582.30. If a deficiency judgment is allowed under section 582.30, the balance of the judgment remaining unpaid may be executed and satisfied in the same manner as a personal judgment against the mortgagor." Minn.Stat. § 581.09.

**7.** The federal district court, in referring to similar litigation brought by appellants' coun-

sel observed: "The fact that the Eighth Circuit rejected Butler's show-me-the-note theory has not deterred Butler from continuing to file dozens of claims based on that theory. Nor has Butler been deterred by the fact that his show-me-the-note theory has been rejected by every federal judge that has addressed it." *Welk,* 850 F.Supp.2d at 985.

lender or the lender's successor. But the original note holder was the lender, Homecomings Financial, and the mortgage states that "[b]orrower" mortgages the premises, "with power of sale," to MERS, and its successors. Therefore, at no point since the inception of the mortgage and the note involved in this appeal has the power of sale ever been limited to the holder of the note.[8]

## II.

■ Finally, appellants assert that because the bank did not show that it is the note holder or that it is entitled to collect anything under the note, the bank is not permitted to make a credit bid at the foreclosure sale. Appellants presumably make this argument because they believe that only the holder or possessor of the note can make such a bid. However, "[t]he mortgagee, or any one claiming under the mortgagee, may fairly and in good faith bid off the premises at such sale; and that in such case the statement of such fact in the report of sale shall have the same effect as a receipt for money paid upon a sale for cash." Minn.Stat. § 581.05 (2010). Not only may "[t]he mortgagee, or any one claiming under the mortgagee"—

here, MERS's successor, the bank—"bid off the premises" at the sale, but, because the mortgagee's bid "shall have the same effect as a receipt for money paid upon a sale for cash," the bid of a mortgagee or a mortgagee's successor may be for something other than cash; typically the mortgage debt. *Id.; see also City of St. Paul,* 517 N.W.2d at 61 n. 2 ("In foreclosure sales, the buyer, if it is the person who foreclosed the mortgage, typically 'bids' the amount of the debt secured by that mortgage and pays no cash to obtain the property."). Therefore, allowing the bank, as MERS's successor, to bid the debt at the sale is consistent with the mortgage, which makes MERS a mortgagee; with the mortgage statute, which allows a mortgagee's successor to "bid off the premises" at the foreclosure sale; and with Minnesota case law, which notes that, typically, at a foreclosure sale, the foreclosing entity bids the amount of the debt secured by the mortgage.[9]

## DECISION

The holder of legal title to a mortgage can foreclose its mortgage by action regardless of whether it also holds the note associated with the mortgage. Here, it is

---

**8.** A mortgage is a species of contract. *See Sch. Dist. No. 10 v. Peterson,* 74 Minn. 122, 129, 76 N.W. 1126, 1128 (1898) (stating that the relevant interest in land could "only be transferred by contract of some kind, [ ]that is, by deed, mortgage, or otherwise"). Appellate courts read contracts "to give effect to all of [the] contract's terms." *Metro. Airports Comm'n v. Noble,* 763 N.W.2d 639, 645 (Minn.2009). The simplest way to allow the lender to "invoke" the power of sale when the mortgage gives that power of sale to MERS and its successors is to allow lenders to direct MERS (or its successor) to exercise that power. Doing so is consistent with both the language of the mortgage and with *Jackson's* idea that the owner of the equitable title to the security instrument (*i.e.,* the note holder) can object to the actions of the owner of legal title to the security interest. We note, however-

er, that *allowing* the note holder to direct MERS, or its successor, to exercise the power of sale does not *require* the note holder to issue that directive.

**9.** Without making an argument on the point, appellants observe that the Truth in Lending Act (TILA), 15 U.S.C. §§ 16011667f (2006, Supp.2008 & Supp.2010) does not allow rescission claims against the entity that services a loan, and that the *Jackson* analysis could preclude them from exercising certain rights under TILA. Because *Jackson* reached its result *despite* acknowledging this possibility, 770 N.W.2d at 501–02, and because the appellants have made no TILA claim in this case, the relevance of their observation is unclear.

undisputed that, at the time it foreclosed the mortgage, the bank held legal title to the mortgage and that appellants had defaulted on their mortgage-related obligations. Therefore, the district court correctly ruled that the bank could foreclose its mortgage. Similarly, at a foreclosure sale, in order to make a credit bid in the amount of the debt due on the mortgage being foreclosed, the mortgagee need not show that it also holds the note associated with the mortgage being foreclosed. Therefore, the district court did not err in confirming the bank's purchase of appellants' property at the sheriff's sale based on the bank's credit bid at that sale.

**Affirmed.**